803 So.2d 131 (2001)
STATE of Louisiana
v.
Wayne GORDON.
Nos. 00-KA-1013, 01-KA-734.
Court of Appeal of Louisiana, Fifth Circuit.
November 27, 2001.
Rehearing Denied February 8, 2002.
*136 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant District Attorney, Gretna, LA, Attorneys for Plaintiff/Appellee.
Bruce G. Whittaker, New Orleans, LA, Attorney for Defendant/Appellant.
Wayne Gordon, In Proper Person, Winnfield, LA.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and CLARENCE E. McMANUS.
DALEY, Judge.
Defendant Wayne Gordon appeals his convictions for possession of a firearm by a convicted felon, a violation of LSA-R.S. 14:95.1, and aggravated battery, a violation of LSA-R.S. 14:34. On appeal, counsel for defendant filed a brief in this court and a Motion to Withdraw as counsel, as per Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and asked for an error patent review. Defendant has filed a pro se brief, arguing thirteen Assignments of Error:
1. The conviction should be reversed because trial court erred by allowing prosecution to suppress exculpatory/impeachment preliminary examination transcript denying a fair trial.
2. The conviction should be reversed because there is insufficient evidence to support this conviction on appeal.
3. The conviction should be reversed because trial court erred by improperly restricting defense efforts on direct examination to question the witness.
4. The conviction should be reversed because trial court erred when it was without authority to adjudicate appellant.
5. The conviction should be reversed because trial court erred in denial of due process by failure to recuse the prosecution.
6. The conviction should be reversed because appellant was denied effective assistance of counsel.

*137 7. The conviction should be reversed because the prosecution used perjured testimony to conquer probable cause.
8. The conviction should be reversed because trial court erred in denial of due process by refusing to subpoena witnesses.
9. The conviction should be reversed because trial court erred when prosecution failed to prove all essential elements of the offense.
10. The conviction should be reversed because trial court erred by failure to act upon motion to quash.
11. The conviction should be reversed because trial court erred when suspended habeas corpus contesting validity of arrest.
12. The conviction should be reversed because the trial court erred when failed to grant motion to quash bill of information based on double jeopardy.
13. Error patent suggested.
Upon thorough review of the Assignments of Error, this court finds no merit to the issues raised by defendant. We affirm his convictions.

PROCEDURAL HISTORY
On January 6, 1998, the Jefferson Parish District Attorney filed two Bills of Information charging defendant, Wayne Gordon, with two related offenses. In district court case number 97-7363, defendant was charged with possession of a firearm by a convicted felon, violation of LSA-R.S. 14:95.1. In case number 98-213, defendant was charged with aggravated battery, violation of LSA-R.S. 14:34. The cases were both assigned to Division "M" in the Twenty-Fourth Judicial District Court. Defendant was arraigned in both cases on January 16, 1998, and pled not guilty.
On April 20, 1998, defendant filed, in proper person, a Motion to Quash the Bill of Information, arguing that the State had failed to timely institute prosecution. Defendant later filed a second pro se Motion to Quash, complaining that the trial court had not addressed the first motion. Although minute entries indicate that a hearing on the Motion to Quash was set and continued several times, there is no evidence that it was ever heard by the trial court.
On January 12, 1999, the trial court advised defendant of his right to a jury trial. After conferring with his attorney, defendant elected to waive that right, and expressed his desire to be tried by the judge. Trial began that day as to both Bills of Information, and concluded on January 13, 1999. The judge found defendant guilty as charged as to both offenses.
On January 28, 1999, the State filed a habitual offender Bill of Information in case number 98-213, alleging defendant to be a second felony offender. On February 9, 1999, defendant was informed of the allegations in the habitual offender bill, and entered a denial. Defendant filed a pro se Motion for New Trial as to both cases. Defense counsel also filed a Motion for New Trial. Defendant filed a pro se Motion in Arrest of Judgment as to both cases.
On February 18, 1999, defense counsel withdrew his Motion for New Trial. Counsel argued only defendant's pro se Motion for New Trial and Motion in Arrest of Judgment. The court denied both pro se motions.
On April 21, 1999, the trial court sentenced defendant to ten years at hard labor on the aggravated battery charge. The court further sentenced defendant to ten years on the charge of felon in possession of a firearm, without parole, probation, or suspension of sentence. The court *138 ordered that the sentences run concurrently.
On the same day, the trial court took up the habitual offender bill. The court advised defendant of his right to remain silent and to his right to an habitual offender hearing. Defendant waived those rights and admitted he was the same person who committed the prior felony alleged in the habitual offender Bill of Information. The State offered evidence to prove that the underlying offense was committed within the ten-year cleansing period provided by LSA-R.S. 15:529.1. The defense argued that the court should apply the five-year cleansing period in effect at the time the prior felony was committed, and not the current ten-year cleansing period. Defendant further argued that the State improperly subjected him to double jeopardy by using the same felony conviction as a basis for the charge of felon in possession of a firearm and as the prior felony in the habitual offender bill.
The judge rejected defendant's arguments, and found him to be a second felony offender. The judge thereafter vacated defendant's original sentence for aggravated battery, and imposed an habitual offender sentence of ten years at hard labor on that charge. The court ordered that the sentence run concurrently with any other sentences defendant was serving. Defendant made an oral Motion for Appeal that day. Defendant filed a pro se Notice of Intention to Appeal on April 23, 1999. The motion was granted on May 26, 1999. Defendant's counsel filed a written Motion for Appeal on August 9, 1999. It was granted on September 16, 1999.
Defendant's appeal in case number 98-213, the aggravated battery conviction, was assigned case number 00-KA-1013 in this Court. The case was assigned to the October 2000 docket. Defendant's appointed counsel filed an Anders brief, stating he found no non-frivolous issues for appeal. Defendant filed a pro se supplemental brief, referencing both convictions. The record in case number 97-7363 (the felon in possession of a firearm conviction) was not lodged in this Court. On October 4, 2000, this Court issued an Order to the trial court, noting that a review of defendant's appeal could not be completed without the record in case number 97-7363. It was ordered that the record in case number 97-7363 be prepared and lodged together with the record in 98-213.
The trial court prepared the record in case number 97-7363, and lodged it with this Court. It was assigned case number 01-KA-734. The trial court submitted the record in case number 00-KA-1013, not as a companion case, but as an exhibit in case number 01-KA-734. On September 14, 2001, this Court issued an Order consolidating 01-KA-734 with the appeal previously filed as 00-KA-1013. It was further ordered that the pro se brief defendant filed in case number 00-KA-1013 would apply to case number 01-KA-734.

FACTS
Bessie Griffin, the victim of the aggravated battery, testified that she had known defendant, Wayne Gordon, for 20 years. As of November 1997, she had dated him for four years, and he was living with her and her children at 1541 London Cross Road in Harvey. Ms. Griffin testified that defendant routinely carried a gun with him in a briefcase, and often threatened to harm her and her relatives. Defendant frequently beat her with the gun. He had once fired five shots at her with his gun. He regularly forced her to have sexual relations with him against her will.
Ms. Griffin testified that, on the afternoon of November 1, 1997, she and her nine-year-old daughter were visiting a neighbor, when defendant entered the house. Ms. Griffin could see he was carrying *139 his gun in his pocket. Defendant demanded to know why Ms. Griffin was taking so long, and ordered her to return home with him. Ms. Griffin and her daughter left the neighbor's house, followed by defendant. Defendant told Ms. Griffin he was going to kill her.
On the following day, a Sunday, Ms. Griffin and defendant argued. Defendant hit her repeatedly with his hand and with the gun. The gun cut her lip. He told Ms. Griffin he was going to kill her on Monday morning after her children had left for school. Defendant did not allow Ms. Griffin to leave the house that day.
While in their bedroom, defendant shoved Ms. Griffin against a dresser. She fell against a mantlepiece near the bed. Defendant reached for his gun and said, "B* *ch.... I should kill you right now." Eventually the confrontation ended. Defendant took all of the telephones in the house and locked them in his briefcase so that Ms. Griffin could not call police.
Ms. Griffin and defendant spent Sunday night together at her house. On Monday morning, November 3, defendant again threatened to kill Ms. Griffin. He told her children, "I'm going to kill your mama." Ms. Griffin prepared her children for school and sent them to a neighbor's house. Once the children were gone, defendant and Ms. Griffin began to struggle and fight with each other. Defendant pushed her in the chest. At one point, Ms. Griffin was able to leave the house. She immediately went to a house across the street and called police. Deputy Edward Eves, a 9-1-1 communications watch commander, produced his department's tape recording of Ms. Griffin's call. The tape was played for the jury.
Deputy Steven Randon of the Jefferson Parish Sheriff's Office responded to Ms. Griffin's 9-1-1 call. He testified that Ms. Griffin appeared frightened and nervous when he arrived, and that she had blood on her lip. She told him not to go into the house, because defendant had a gun. Randon called for backup officers. When they arrived, Ms. Griffin directed them to the bedroom where defendant was found lying face-down on the bed, apparently asleep. The officers roused defendant and asked him whether he had a gun. Defendant said he did not. The officers conducted a cursory search and found a briefcase under the bed, on the side where defendant had been lying. Inside the briefcase was found a .357 Magnum revolver. The gun was loaded. Defendant told the officers the gun was not his. However, Ms. Griffin identified the gun as the one defendant had used to hit her.
After interviewing Ms. Griffin, Deputy Randon placed defendant under arrest. Randon testified that defendant gave him the name Keith Gordon at the time of arrest, and that the name was later discovered to be false. Ms. Griffin testified that defendant called her once from jail after his arrest, and told her he planned to steal a deputy's gun, kill her with it, and then kill himself.
Airann Griffin, the victim's 14-year-old daughter, testified that defendant had lived at her mother's house off and on for four years prior to his arrest for the instant offenses. He slept there every night. He was not a peaceful man, and often fought with her mother. She recounted defendant's threats when he went to the neighbor's house to order her mother and sister to return home. Defendant had a gun with him, and said he was going to kill her mother.
Airann testified that defendant kept a gun in a briefcase, and kept the case under the side of the bed where he slept. She identified State's Exhibit 4 as defendant's *140 briefcase. She testified that State's Exhibit 5 looked like defendant's gun.
Defense witness, Jocelyn Walters, testified that defendant had been living with her for some time prior to November 1, 1997, and that he was the father of her child. She testified that defendant slept at her house every night from May to November 1997. She was one month pregnant with their child in November 1997. She did not know whether defendant saw Bessie Griffin during that period.
Ms. Walters testified that defendant slept with her at their residence in Michoud on the night of November 1, 1997. They spent the morning of November 2nd together. Defendant left the house at about noon, and did not return that night. She attempted to page him several times, but he did not respond. Ms. Walters testified that she has never seen defendant with a gun or a briefcase.
Defendant, who was age 42 at the time of trial, admitted that he was convicted of armed robbery when he was 23 years old. He served 14 years in prison.[1] From the time of his release in 1993 until November 1996, he lived off and on with Bessie Griffin. They had a volatile relationship, and police were frequently called to intervene in their domestic disputes. He was arrested on five different occasions as a result. Most of the police calls did not result in arrests, because the officers did not generally believe Ms. Griffin's accusations. Defendant testified that during the time he lived with Ms. Griffin, he never used a gun, and he never struck her. He stated that he did not fire a gun at Ms. Griffin. The incident she testified to actually involved Ms. Griffin firing a gun at him. On cross-examination, defendant admitted that it was he who was arrested in relation to that incident. However, Ms. Griffin later told him the charges had been dismissed.
Defendant testified that he lived briefly with Rosalind Davison in Baton Rouge in 1995 or 1996. However, when he discovered she owned a gun, he moved out of the residence. He was aware that, as a convicted felon, he was not to possess a firearm. Defendant testified that in 1997 he began living with Ms. Walters. He also spent time at his father's house in order to help care for him.
Defendant testified that Ms. Griffin called his pager several times on November 2, 1997, after he had not had contact with her for some time. He went to a public telephone to call her. She asked him to pick her up from her brother's house. After he picked her up, they smoked marijuana and drank daiquiris. The two went to Ms. Griffin's house, where they watched television in a bedroom while continuing to smoke marijuana.
When Ms. Walters called his pager, defendant attempted to leave Ms. Griffin's house. She began to cry, and begged him to stay. Out of pity for her, defendant agreed. Defendant testified that he and Ms. Griffin slept in the same bed that night. He slept through the night, and was awakened by police at about 8:47 on Monday morning.
Defendant testified that the officers found the gun inside a purse that was stored in the briefcase. The briefcase was under the side of the bed on which he had slept, but he did not know the gun was there. He had never seen the gun before the police recovered it. Defendant speculated *141 that the gun was purposely placed there by either Ms. Griffin or her son. He said Ms. Griffin had a vendetta against him, because he had refused to help her perpetrate an insurance fraud involving an automobile accident. He believed she had "set him up" in order to have him arrested.
Monica Gordon, defendant's sister, testified that she has never seen defendant with a gun, but that she saw Bessie Griffin fire shots at defendant in front of her (Ms. Gordon's) house in an incident that occurred two to three years prior to trial. Ms. Gordon testified that defendant stayed with Ms. Griffin on occasion, but that he primarily lived with their father, who was an invalid. She further testified that in November 1997, defendant was living with Jocelyn in Michoud. Ms. Gordon stated that Bessie never told her she felt threatened by defendant. Rather, Bessie always said she loved him.
Defendant's niece, Terquelicua Williams, testified that she has never seen defendant carry or threaten anyone with a gun. Defendant's son, Wayne Davis, also testified that he has never seen defendant with a gun.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant's counsel filed a brief in case number 00-KA-1013 and in case number 01-KA-734. Counsel asserts no Assignments of Error, and requests only that this Court review the entire record for errors patent. Counsel has filed a Motion to Withdraw under the holding of Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).
Anders also provides that "[a] copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses ..." 386 U.S. at 744, 87 S.Ct. at 1400. Counsel has attached to his brief in case number 00-KA-1013 a copy of a letter to defendant dated May 30, 2000, which satisfies the notice requirements.[2] Defendant has responded by filing a pro se supplemental brief.
Counsel adequately complied with the provisions of State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241. Counsel analyzed and dismissed on legal grounds the issues of proper mode of trial under LSA-C.Cr.P. art. 493.2, sufficiency of the evidence, and the constitutionality of defendant's sentences. We grant counsel's Motion to Withdraw.
Defendant raises several issues in his supplemental brief. A discussion of defendant's claims and an errors patent review follow.

PRO SE ASSIGNMENT OF ERROR NUMBER ONE
The conviction should be reversed because trial court erred by allowing prosecution to suppress exculpatory/impeachment preliminary transcript denying a fair trial.
By this assignment, defendant argues that he was deprived of an opportunity to impeach State's witness Deputy Steven Randon with conflicting testimony he had given at the preliminary hearing, because he was not supplied with a transcript of the preliminary hearing prior to trial. Under LSA-C.Cr.P. art. 294, a defendant is entitled to a transcript of the preliminary hearing in a prosecution. Additionally, *142 LSA-C.Cr.P. art. 295 C provides, "The transcript of testimony given by a person at a examination may be used by any party in a subsequent judicial proceeding for the purpose of impeaching or contradicting the testimony of such person as a witness." Although a criminal defendant has a statutory right to a preliminary hearing transcript, the failure to provide the defendant with his preliminary hearing transcript is not a reversible error unless it is shown that the cross-examination and impeachment of prosecution witnesses were hampered at trial.[3]
A preliminary hearing was held in this case on May 21, 1998. Deputy Randon was the only witness to testify at the hearing. The court found probable cause. Defendant subsequently filed a pro se Motion and Order for Preliminary Examination Transcripts.[4] Between the day of the motion hearing and the day of trial, defendant's counsel withdrew, and a new attorney was appointed to represent him. There is no showing in the record that defendant's trial counsel pursued compliance with article 294 prior to trial. On the day of trial, counsel did not object to the fact that the defense had not been supplied with the preliminary hearing transcript. The jurisprudence provides that when a defendant proceeds to trial without raising the issue that there are motions pending that the court has not ruled on, he waives those motions. State v. Post, 98-869, p. 9 (La.App. 5 Cir. 2/10/99), 729 So.2d 38, 42.

PRO SE ASSIGNMENT OF ERROR NUMBERS TWO & NINE
The conviction should be reversed because there is insufficient evidence to support this conviction on appeal, and the conviction should be reversed because trial court erred when prosecution failed to prove all essential elements of the offense.
By these assignments, defendant complains that the State failed to provide sufficient evidence to support his conviction for possession of a firearm by a convicted felon. Defendant argues the State failed to prove that he had the necessary intent to possess the weapon. As to the aggravated battery charge, defendant argues the State failed to prove the victim's injury.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the elements of the crime in the light most favorable to the prosecution, to find the essential elements of the offense were proven beyond a reasonable doubt.[5] The elements necessary to sustain a conviction under LSA-R.S. 14:95.1 are (1) possession of a firearm, (2) prior conviction for an enumerated felony, (3) absence of the ten-year statutory limitation period, and (4) the general intent to commit the crime.[6] Actual possession of a firearm is not necessary to satisfy the *143 possession element of the statute; it is sufficient that the subject had constructive possession.[7] A person is in constructive possession of a thing if it is subject to his dominion and control.[8]
Mere presence in an area where a firearm is found does not necessarily establish possession. The State must prove that the offender was aware that a firearm was in his presence, and that he had the general criminal intent to possess the weapon.[9] Such guilty knowledge may be inferred from the circumstances.[10] Defendant argues that his presence in the bedroom was not in itself sufficient to prove he knew about the gun or its whereabouts. However, the State proved more than defendant's presence in the room where the gun was found.
Ms. Griffin and her daughter, Airann, both testified that they had seen defendant with the gun on numerous occasions. They further testified that defendant regularly carried the gun in the briefcase in which it was found by police. Deputy Randon testified that the gun was found underneath the side of the bed on which defendant was lying. It was within defendant's immediate control. Ms. Griffin testified that defendant always kept the gun in the briefcase under the side of the bed where he slept. She identified the gun recovered from under the bed as defendant's gun. This evidence together supported the State's allegation that defendant possessed the gun. Compare State v. Jackson, 97-1246 (La.App. 5 Cir. 4/13/98), 712 So.2d 934, writ denied, 98-1454 (La.10/16/98), 726 So.2d 37, in which this Court found defendant knowingly possessed a gun where police found it in his bedroom, under the bed in which he regularly slept.
It is defendant's claim that the gun actually belonged to Ms. Griffin, and that she used it to "set him up." When the trier-of-fact is confronted by conflicting testimony, the determination of that fact rests solely with the judge or jury, who may accept or reject, in whole or in part, the testimony of any witness.[11] It is not the function of the appellate court to assess or re-weigh the evidence.[12] In the instant case, the judge made a credibility determination, and apparently believed the testimony of the State's witnesses. Based on the foregoing, it appears the State sufficiently proved that defendant knowingly possessed the gun seized by police.
As to the defendant's second charge, battery is defined by LSA-R.S. 14:33 as "the intentional use of force or violence upon the person of another...." LSA-R.S. 14:34 provides that an aggravated battery is "a battery committed with a dangerous weapon." The State alleged that the dangerous weapon defendant used to commit a battery on Ms. Griffin was the gun officers found under his bed. Defendant complains that the State produced no evidence to substantiate that he hit Ms. Griffin in the face with a gun. Defendant *144 also argues that the State produced no photographs or medical reports to substantiate Ms. Griffin's injuries.
Ms. Griffin's testimony was the only direct evidence of the aggravated battery. She testified that she and defendant were alone in her house on Sunday, November 2nd, when they began to argue. Defendant slapped her in the face with his gun and split her lip. She did not call police that night because defendant would not allow her to use the telephone. By the time Deputy Randon saw Ms. Griffin the following day, he recognized that her mouth was injured. The question here is whether Ms. Griffin's testimony, along with the supporting circumstantial evidence, was sufficient to support the guilty verdict.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support a factual conclusion.[13] In the instant case, the judge appears to have found Ms. Griffin's testimony credible. The evidence was sufficient to support defendant's aggravated battery conviction.

PRO SE ASSIGNMENT OF ERROR NUMBER THREE
The conviction should be reversed because trial court erred by improperly restricting defense efforts on direct examination to question the witness.
Defendant here complains that the trial court erred in denying him the opportunity to question defense witness, Rosalind Davison, about the victim's general reputation in the community. He argues that the defense was prevented from pursuing a line of questioning that would have established Ms. Griffin's reputation for carrying a weapon, and defendant's reputation for staying away from guns. Rosalind Davison testified that she is defendant's cousin. She stated she had known Bessie Griffin for a "long time." She testified that she had lived with defendant in Baton Rouge for about four months in 1995 or 1996, and that he had moved out suddenly.
Defense counsel inquired during a bench conference whether he would be allowed to question Ms. Davison regarding a robbery incident that led her to buy a gun for protection. Counsel intended to show that defendant had moved out of Ms. Davison's house after she obtained the gun because he knew that, as a convicted felon, he could not be around firearms. The State objected to such questioning on grounds of relevancy. The court ruled that counsel could not go into the subject of why defendant left her house if it meant eliciting hearsay testimony. Counsel asked only a few additional questions having to do with when defendant moved from Ms. Davison's apartment.
The testimony counsel sought to elicit did not, as defendant contends, concern Ms. Griffin's general reputation in the community. Moreover, the testimony counsel was prevented from eliciting from Ms. Davison was later adduced from defendant himself. Defendant testified that he left Ms. Davison's apartment because she had obtained a gun. He also gave testimony regarding Ms. Griffin's propensity for violence. Defendant does not show that he was prejudiced by the court's rulings during Ms. Davison's testimony.
Defendant further contends that he moved the court to subpoena Trenise Brown to testify on his behalf. He states that Ms. Brown was the victim's long-time neighbor, and could have testified regarding *145 Ms. Griffin's reputation in the neighborhood. Defendant also points out that Ms. Griffin's 9-1-1 call was made from Ms. Brown's house, and that she could have given testimony regarding Ms. Griffin's actions that morning. Defendant complains that he was prejudiced by the trial court's failure to subpoena Ms. Brown.
The record contains two pro se Motions for Compulsory Process. Each requests that subpoenas be issued to various witnesses. Ms. Brown is not one of them. Additionally, there is nothing in the record to show that defendant objected to the court's alleged failure to subpoena Ms. Brown, or proffered the testimony she would have given if present at trial. Defendant failed to preserve the issue for appeal.[14]

PRO SE ASSIGNMENT OF ERROR NUMBER FOUR
The conviction should be reversed because trial court erred when it was without authority to adjudicate appellant.
Defendant here argues that the mode of trial by which he was convicted was improper under the law. Defendant cites LSA-C.Cr.P. art. 493.2, regarding the joinder of felonies. The article provides:
Notwithstanding the provisions of Article 493, offenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which the punishment may be confinement at hard labor, provided that the joined offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. Cases so joined shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict.
Defendant contends that because he was tried simultaneously for a felony requiring confinement at hard labor (LSA-14:95.1), and a felony punishable by imprisonment with or without hard labor (LSA-R.S.14:34), the statute required that he be tried by a jury of twelve, and not a judge. Defendant raised the issue below in a pro se Motion in Arrest of Judgment. He also made the argument in his pro se Motion for New Trial. Counsel argued the motions in open court on February 18, 1999, and they were denied. Defendant applied for Supervisory Writs to this Court from the trial court's ruling. This Court denied writs on March 2, 1999, stating, "The writ application was not timely filed. Moreover, we find no merit in relator's argument that La.C.Cr.P. art. 493.2 mandates a trial by jury which cannot be waived by a defendant. Relator may raise this issue on appeal."
Nothing is found in the jurisprudence to support defendant's claim that felonies joined under article 493.2 may be tried only by a jury. The Fourth Circuit, in discussing the application of the article to the facts in State v. Carter, 97-1096, p. 5 (La.App. 4 Cir. 5/20/98), 713 So.2d 796, 799, writ denied, 98-1538 (La.11/6/98), 726 So.2d 920, commented, "The law did not change until 1997 by Acts 599 Sec. 1, when the legislature added La.C.Cr.P. art. 493.2, which permits such joinder of offenses, to be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict." (Emphasis supplied). Article 493.2 does not change a defendant's right under LSA-C.Cr.P. art. 782 B to knowingly and intelligently waive a jury trial.
*146 In his argument to the trial court, defense counsel stated, "before the trial, the Defendant waived his right to a jury because he decided that, or felt or we felt that the judge trial in this case would have been a better opportunity for him to seek justice." Defendant has made no showing here that his waiver of a jury trial was not knowing and voluntary, or that he did not receive a fair trial before the judge. Based on the foregoing, this Assignment of Error has no merit.

PRO SE ASSIGNMENT OF ERROR NUMBER FIVE
The conviction should be reversed because trial court erred in denial of due process by failure to recuse the prosecution.
By this assignment, defendant complains that the trial court erred in failing to recuse the Jefferson Parish District Attorney's Office from prosecuting his case. Defendant filed a pro se Motion for Recusation of District Attorney. Although defendant states that he filed the motion on December 28, 1998, it is unclear from the record when the motion was filed. In his motion, defendant alleged the following:
RICHARD P. IEYOUB, Attorney General, through DAVID G. SANDERS, Assistant Attorney General, concedes defendant instituted suit against David Wolf, Assistant District Attorney, Con Reagan, Supervising District Attorney; Paul Connick, Jr. District Attorney, et al., who are not indemnified by the state under the Eleventh Amendment Immunity.
Defendant declares David Wolf shall be recused because he has a personal interest in the cause which is in conflict with fair and impartial administration of justice. C.Cr.P. art. 680.(1); State v. Gatch, 669 So.2d 676 (La.App. 2 Cir. 1996).[15]
Defendant states that the trial court did not rule on the motion. Indeed, a review of the record does not show that the motion was ever taken up by the trial court, or that defense counsel raised the issue of the outstanding motion prior to trial. The jurisprudence provides that when a defendant proceeds to trial without raising the issue that there are motions pending which the court has not ruled on, he waives those motions.[16] Considering there was no ruling below, there is nothing for this Court to consider. This Assignment of Error has no merit.

PRO SE ASSIGNMENT OF ERROR NUMBER SIX
The conviction should be reversed because appellant was denied effective assistance of counsel.
Defendant argues that his trial counsel was ineffective in referring to his previous felony conviction during trial, and in asserting defendant's pro se Motion for New Trial rather than his (counsel's) own at the time of the motion hearing. A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution. To prove a claim for ineffectiveness, the defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. To show prejudice as required in order to establish ineffective assistance of counsel, the defendant must *147 demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different.[17]
Claims for ineffective assistance of counsel are most appropriately addressed through application for post-conviction relief, so as to afford the parties an adequate record for review. However, if the record contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy.[18] In the instant case, the record contains sufficient evidence to review defendant's claims.
Defendant filed a pro se Motion for New Trial, raising the argument that the joinder of the two felony offenses of which he was convicted required that he be tried by a jury. Counsel also filed a Motion for New Trial, arguing that the victim, Bessie Griffin, had given perjured testimony, and that new and material evidence had been discovered after the trial.
At the motion hearing on February 18, 1999, defense counsel withdrew his own motion, and argued only the issue contained in defendant's pro se motion.
Defendant complains that counsel prejudiced him by showing ignorance of the law when he admitted to the trial court that he was not familiar with article 493.2, at the time of trial. Counsel's knowledge of the article, or lack thereof, is of no moment, since the argument in defendant's new trial motion had no merit.[19]
Defendant further argues that counsel contributed to his conviction when he "inadvertently blurted that his client is in fact guilty of armed robbery, wherein armed robbery has nothing to do with the present charges." Defendant does not indicate what portion of the record he believes supports this claim. He perhaps refers to the discussion at the commencement of trial during which the attorneys discussed a stipulation to the predicate felony the State wished to use in support of the charge of possession of a firearm by a convicted felon. Defense counsel entered into a stipulation with the prosecutor to the effect that defendant had been convicted of armed robbery in 1980, and was sentenced to serve twenty years. The parties further stipulated that defendant was released on November 20, 1989.
The stipulation entered into by defense counsel was neither deficient nor prejudicial. Such stipulations are often entered into by counsel in the interest of judicial economy and trial strategy. If an alleged error falls "within the ambit of trial strategy," it does not establish ineffective assistance of counsel.[20] The State was able to provide ample evidence to prove defendant's prior conviction and release date, even without defense counsel's cooperation. Moreover, defendant himself admitted to the prior conviction in his testimony, and explained that he was not in fact armed during that incident.
Defendant does not show that his trial attorney was deficient, or that he was prejudiced *148 by counsel's actions. This Assignment of Error has no merit.

PRO SE ASSIGNMENT OF ERROR NUMBER SEVEN
The conviction should be reversed because the prosecution used perjured testimony to conquer probable cause.
By this assignment, defendant argues the trial court erred in making a finding of probable cause at the preliminary hearing, as the State presented perjured testimony by Deputy Randon. The purpose of a preliminary hearing is to determine if there is probable cause to believe a defendant has committed a crime in order to hold him on his bond obligation until trial. LSA-C.Cr.P. art. 296; State v. Collins, 00-1818, p. 6 (La.App. 4 Cir. 4/11/01), 787 So.2d 391, 395. The court's finding of probable cause sufficient to hold defendant on bond was rendered moot by defendant's subsequent trial and conviction.[21] This Assignment of Error has no merit.

PRO SE ASSIGNMENT OF ERROR NUMBER EIGHT
The conviction should be reversed because trial court erred in denial of due process by refusing to subpoena witnesses.
By this assignment, defendant argues that, despite his submission of several pre-trial motions, several defense witnesses were not subpoenaed, and he was thereby deprived of his right to compulsory process. A defendant's right to compulsory process is the right to demand subpoenas for witnesses and the right to have those subpoenas served. United States Constitution, Amendment VI; La. Const. of 1974, art. I, § 16; LSA-C.Cr.P. art. 731.
The record contains two pro se motions for compulsory process. Attached to defendant's brief are several additional pro se motions and letters from defendant to the court requesting that various witnesses be subpoenaed. Aside from the fact that there is nothing in the record to indicate what defense witnesses were subpoenaed by the court, there is nothing to show that defendant raised the issue before the district court at the time of trial. Nor is there anything in the record to show that defendant made a proffer of what the witnesses' testimony would be if they were to testify. Defendant has failed to preserve the issue for appeal. LSA-C.Cr.P. art. 841. Absent a ruling from the trial court, there is nothing for this Court to consider. This Assignment of Error has no merit.

PRO SE ASSIGNMENT OF ERROR NUMBER TEN
The conviction should have been reversed because trial court erred by failure to act upon Motion to Quash.
By this assignment, defendant argues his convictions should be vacated because the trial court's failure to rule on his Motions to Quash the Bill of Information constitutes reversible error. Defendant filed two pro se Motions to Quash, in which he complained that the prosecution had failed to timely file charges against him. The trial court repeatedly continued the hearing on the matter. Defendant filed several Applications for Supervisory Writs to this Court, citing the trial court's failure to rule on his Motions to Quash. This Court denied each application on grounds that defendant's motion was set for hearing in the trial court.
*149 As defendant claims, there is no evidence in the record that the trial court ever ruled on the Motions to Quash. However, the record shows that defendant proceeded to trial without objecting to the trial court's failure to rule on the motion. If a defendant does not object to the trial court's failure to rule on a motion prior to trial, the motion is considered waived. State v. Post, supra.
In any case, defendant's argument has no merit. LSA-C.Cr.P. art. 701 provides, in pertinent part:
A. The state and the defendant have the right to a speedy trial.
B. (1) When the defendant is continued in custody subsequent to an arrest, an indictment or information shall be filed within forty-five days of the arrest if the defendant is being held for a misdemeanor and within sixty days of the arrest if the defendant is being held for a felony.
(2) ... Failure to institute prosecution as provided in Subparagraph (1) shall result in release of the defendant if, after contradictory hearing with the district attorney, just cause for the failure is not shown. If just cause is shown, the court shall reconsider bail for the defendant.
Under article 701 B, defendant should have been charged within sixty days of his arrest, or released from bond. Defendant was arrested on November 3, 1997, and the District Attorney instituted charges by Bills of Information filed on January 6, 1998, more than sixty days thereafter. The proper remedy would have been for the trial court to release defendant without bond, unless the District Attorney showed just cause why it failed to meet the sixty-day deadline. The record does not show that either of those circumstances occurred. The issue is now moot, however, since defendant went to trial on January 12, 1999, without objecting to the court's failure to rule on the motion. It would be impossible for this Court to grant the defendant the remedy allowed by law. The trial court's failure to rule on the motion would not be grounds for a reversal, as defendant suggests. Based on the foregoing, this Assignment of Error merits no consideration.

PRO SE ASSIGNMENT OF ERROR NUMBER ELEVEN
The conviction should be reversed because trial court erred when suspended habeas corpus contesting validity of arrest.
It appears that defendant's complaint here is that he was not brought before a judge within 72 hours of his arrest, as required by law. Defendant has attached to his brief (Exhibit "M") an Application for Writ of Habeas Corpus, in which he makes this argument. However, the motion is not found in the record, and the copy attached to defendant's brief is not stamped as filed. There is nothing in the record to indicate there was a ruling on this issue in the trial court. There is therefore nothing for this Court to consider. This Assignment of Error has no merit.

PRO SE ASSIGNMENT OF ERROR NUMBER TWELVE
The conviction should be reversed because the trial court erred when failed to grant Motion to Quash Bill of Information based on double jeopardy.
Defendant complains that the State subjected him to double jeopardy in charging him with aggravated battery and possession of a firearm by a convicted felon. Double jeopardy is most properly raised in a Motion to Quash in the district court. Defendant did not raise the issue in his Motions to Quash. However, double jeopardy can be raised at any time, but *150 only once.[22] It appears, therefore, that this Assignment of Error is properly before this Court.[23]
The Fifth Amendment to the United States Constitution, as well as Article I, § 15 of the Louisiana Constitution prohibit placing a person twice in jeopardy of life or limb for the same offense. See also, LSA-C.Cr.P. art. 591. Double jeopardy provisions are intended to protect an accused not only from a second prosecution for the same criminal act, but also multiple punishment for the same act. State v. Lefeure, supra.
Louisiana courts have used two tests in evaluating double jeopardy claims. The first is the "distinct fact" test, taken from the United States Supreme Court's decision in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed.2d 306 (1932). Under this test, the question is whether the same act or transaction constitutes a violation of two distinct statutory provisions. To determine whether there are two offenses or only one, the pertinent question is whether each provision requires proof of an additional fact which the other does not.[24]
The second test is the "same evidence" test. Under that test, if the evidence required to support a finding of guilt as to one crime would also have supported a conviction as to the other, double jeopardy exists.[25] Although the Louisiana Supreme Court has accepted both the Blockburger test and the "same evidence" test, it has principally relied on the "same evidence" test to analyze double jeopardy claims.[26]
In his brief to this Court, defendant concedes that the "offenses for which he was convicted includes [sic] different elements." (Appellant's Brief, p. 36). In effect, he admits that he was not subjected to double jeopardy under the "same evidence" test. His contention is that the charges against him arose from the same course of conduct, and that he was subjected to double jeopardy under the Blockburger test. Defendant's argument is without merit.
An accused who commits separate and distinct offenses during the same criminal episode or transaction may be prosecuted and convicted for each offense without violating the prohibition against double jeopardy. State v. Bridgewater, 98-658 at p. 8, 726 So.2d at 991. In defendant's case, the aggravated battery and the possession of the firearm can be said to have occurred during the same episode. It is more accurate to say, however, that the charges involved two separate incidents. The battery occurred on November 2, 1997, and police officers discovered defendant in possession of the gun the following day. In any case, each offense requires proof of at least one fact that the other offense does not require. To be. convicted under LSA-R.S. 14:95.1, a defendant must have a prior conviction for an enumerated felony, and must have the intent to simply possess a firearm. Those *151 elements are not required under the aggravated battery statute. Conversely, a battery requires the intentional use of force or violence upon the person of another. LSA-R.S. 14:95.1 has no such requirement. Defendant was not subjected to double jeopardy under either of the two tests. This Assignment of Error merits no consideration.

ASSIGNMENT OF ERROR NUMBER THIRTEEN (ERRORS PATENT)
The records in the instant companion cases were reviewed for errors patent. LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
The record does not show that the trial court advised defendant of the two-year prescriptive period for filing an Application for Post-Conviction Relief, as provided by LSA-C.Cr.P. art. 930.8. Accordingly, we order the trial court to send notice to defendant of said provisions within ten days of the judgment in this case, and to place evidence of the notice in the trial court record. State v. Stelly, 98-578, p. 6 (La.App. 5 Cir. 12/16/98), 725 So.2d 562, 564.
The commitment for defendant's habitual offender sentence does not conform with the sentencing transcript, in that the commitment provides that defendant's sentence is to be served without benefit of parole, probation, or suspension of sentence. When the transcript and the minute entry conflict, it is the transcript that prevails. State v. Lynch, 441 So.2d 732 (La.1983). Additionally, the sentence in the commitment is illegal, as LSA-R.S. 15:529.1G does not require that a second felony offender be denied the right to parole. Defendant's sentence in case 98-213 (aggravated battery) is amended to delete any prohibition against parole eligibility. The trial court is ordered to correct the commitment accordingly.
AFFIRMED; REMANDED WITH INSTRUCTIONS
NOTES
[1] With respect to the charge of possession of a firearm by a convicted felon, the State offered certified records documenting defendant's arrest, conviction, and prison release for the predicate conviction. The parties offered a stipulation as to the accuracy of the information in those documents.
[2] Additionally, this Court notified defendant by certified letter dated June 9, 2000 that he would have 30 days within which to supplement counsel's brief in case number 00-KA-1013. In case number 01-KA-734, counsel attached a copy of a notice letter to defendant dated July 30, 2001. This Court sent defendant a certified letter dated August 2, 2001, supplying him with notice regarding case number 01-KA-734.
[3] State v. Benson, 368 So.2d 716, 718 (La. 1979); State v. Williams, 00-1850, p. 5 (La. App. 5 Cir. 4/11/01), 786 So.2d 785, 791; State v. Próut, 95-1845, p. 4 (La.App. 4 Cir. 4/10/96), 672 So.2d 933, 935.
[4] Although the index to the record shows the motion was filed on April 20, 1998, the copy of the motion in the record does not bear a filing date.
[5] State v. Evans, 00-1766, p. 3 (La.App. 5 Cir. 4/11/01), 786 So.2d 781, 783; State v. Williams, 99-223, p. 6 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 607.
[6] State v. Husband, 437 So.2d 269, 271 (1983); State v. Powell, 00-1729, p. 6 (La.App. 5 Cir. 3/14/01), 783 So.2d 478, 480-481.
[7] State v. Johnson, 98-604, p. 8 (La.App. 5 Cir. 1/26/99), 728 So.2d 901, 906, writ denied, 99-0624 (La.6/25/99), 745 So.2d 1187; State v. Stelly, 98-578, p. 4 (La.App. 5 Cir. 12/16/98), 725 So.2d 562, 563-564.
[8] Id.
[9] State v. Curtis, 99-45, p. 21 (La.App. 5 Cir. 7/27/99), 739 So.2d 931, 944.
[10] State v. Villarreal, 99-827, p. 7 (La.App. 5 Cir. 2/16/00), 759 So.2d 126, 131, writ denied, 00-1175 (La.3/16/01), 786 So.2d 745.
[11] State v. Webber, 99-23, p. 9 (La.App. 5 Cir. 7/27/99), 742 So.2d 952, 956.
[12] Id.; State v. Batiste, 96-1010, p. 14 (La. App. 5 Cir. 1/27/98), 708 So.2d 764, 772, writ denied, 98-0913 (La.9/4/98), 723 So.2d 954.
[13] State v. Parent, 01-50, p. 7 (La.App. 5 Cir. 5/30/01), 788 So.2d 685, 689.
[14] See further discussion of this issue under Pro Se Assignment of Error Number Eight, ante.
[15] LSA-C.Cr.P. art. 680 provides, in part:

A district attorney shall be recused when he:
(1) Has a personal interest in the cause or grand jury proceeding which is in conflict with fair and impartial administration of justice.
[16] State v. Post, 98-869, p. 9 (La.App. 5 Cir. 2/10/99), 729 So.2d 38, 42.
[17] Strickland v. Washington, 446 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Snavely, 99-1223, p. 14 (La.App. 5 Cir. 4/12/00), 759 So.2d 950, 959, writ denied, 00-1439 (La.2/16/01), 785 So.2d 840.
[18] State v. Hamilton, 92-2639, pp. 4-5 (La.7/1/97), 699 So.2d 29, 31, cert. denied, 522 U.S. 1124, 118 S.Ct. 1070, 140 L.Ed.2d 129 (1998); State v. Pendelton, 00-1211, pp. 9-10 (La.App. 5 Cir. 3/14/01), 783 So.2d 459, 465-466.
[19] See Pro Se Assignment of Error Number Four, above.
[20] See, State v. Williams, 98-KA-1146, p. 18 (La.App. 5 Cir. 6/1/99), 738 So.2d 640, 653, writ denied, 99-1984 (La.1/7/00), 752 So.2d 176.
[21] Compare State v. Washington, 363 So.2d 509, 510 (La.1978), in which the Louisiana Supreme Court found that a trial court's denial of a preliminary hearing is rendered moot after conviction, at least in the absence of prejudice.
[22] LSA-C.Cr.P. arts. 532, 594; State v. Lefeure, 00-1142, p. 8 (La.App. 5 Cir. 1/30/01), 778 So.2d 744, 750, writ denied, 01-1440 (La.9/21/01), 797 So.2d 669.
[23] Id.
[24] State v. Knowles, 392 So.2d 651, 654 (La. 1980); State v. Bridgewater, 98-658, p. 9 (La. App. 5 Cir. 12/16/98), 726 So.2d 987, 991.
[25] State v. Jackson, 96-661, p. 14 (La.App. 5 Cir. 4/9/97), 694 So.2d 440, 448, writ denied, 97-1050 (La.10/13/97), 703 So.2d 609.
[26] State v. Miller, 571 So.2d 603, 606 (La. 1990).