836 So.2d 589 (2002)
STATE of Louisiana
v.
Broc J. LEE.
No. 02-KA-0704.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 2002.
*591 Paul D. Connick, Jr., District Attorney, Terry Bourdreaux, Andrea F. Long, George Wallace, Assistant District Attorneys, Gretna, LA, for Appellee.
Jane L. Beebe, Gretna, LA, for Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., MARION F. EDWARDS and CLARENCE E. McMANUS.
MARION F. EDWARDS, Judge.
Defendant, Broc Lee, appeals his conviction of possession of a firearm by a convicted felon. We affirm.
Lee was charged by bill of information with a violation of LSA-R.S. 14:95.1. Lee waived his presence at arraignment, and counsel entered a plea of not guilty on his behalf. Lee filed a Motion to Suppress the Evidence, Confession and Identification, which motion was referred to the merits of the case.
On the day of trial, the trial judge advised Lee of his right to a trial by jury. Lee opted to waive that right and requested a bench trial. Trial on the merits was held that day, and, at its conclusion, the court found Lee guilty as charged.
The trial court subsequently sentenced Lee to ten years at hard labor, without benefit of parole, probation or suspension of sentence. On March 11, 2002, defendant filed an application for post-conviction relief, seeking an out-of-time appeal, which was granted.
Testimony and evidence taken at the trial disclose the following. At 3:00 p.m. on August 24, 1999, Deputies Bryan Huesman and Chad Dear of the Jefferson Parish Sheriff's Office were on patrol in Gretna. They were dressed in uniforms identifying them as members of the Street Crimes Division and were traveling in an unmarked police vehicle. Huesman drove the vehicle and Dear rode in the passenger seat.
The officers testified that they passed a white Honda Accord automobile on the Westbank Expressway. Huesman stated that he could see the driver of the vehicle, which was on his left, was not wearing a seatbelt, in violation of traffic laws. Deputy Huesman slowed the police unit and pulled behind the Accord in order to make a traffic stop. Without signaling, the driver of the Accord made a sharp turn into a bus terminal located in the median of the expressway. Huesman was required to make a U-turn in order to follow. The officers saw the front seat passenger of the vehicle bend down in his seat as if he were attempting to conceal himself from them. The driver of the vehicle parked it in the bus terminal. Huesman activated his vehicle's police lights and parked behind the Accord.
The deputies exited their vehicle, identified themselves as police officers, and ordered the two men in the Accord to get out of their car. The subjects complied, leaving the car's doors open. Huesman approached the driver, Melvin London, and Dear walked toward the passenger, Lee. Huesman explained to London that he had been stopped for traffic violations and asked for his driver's license, proof of automobile insurance, and registration. The officers issued London traffic citations for *592 failure to wear a seatbelt and for failure to use a turn signal.
Through the open door, Dear could see, on the floorboard under the passenger seat, a chrome-plated .25 caliber handgun. He informed his partner of his discovery, and Huesman immediately handcuffed both subjects for purposes of the officers' safety. Upon retrieving the gun from the floorboard, Dear found a second .25 caliber handgun under the front passenger seat. Both weapons were loaded. Lee and London both denied ownership of the guns.
The officers ran the subjects' names and the guns' serial numbers through the NCIC system and found that Lee was a convicted felon. Lee was placed under arrest. Huesman conducted a pat-down search of Lee's person and discovered he was wearing a gun holster clipped to the waistband of his pants, concealed by his shirt.
The officers called Louis Mungia, a crime scene technician, to the scene. Mungia took custody of the evidence. He also attempted to lift fingerprints from the guns but was unsuccessful.
Melvin London testified at trial that he is related to Lee by marriage. He stated that the Honda Accord is his car but that the guns did not belong to him. Lee had the guns on his person, and London did not see them until the police made the traffic stop. Lee then removed the guns from under his shirt.
Lee's parents, Arthur and Linda Lee, testified that Lee has never owned guns, and they have never seen him in possession of one. During his testimony, Lee admitted to two prior felony convictions for possession of cocaine. However, he denied that the guns seized by the officers were his, or that he was ever in possession of them.
Lee argues that the state failed to prove his guilt beyond a reasonable doubt, as it did not show he had possession of the guns found by Deputy Dear. When issues are raised on appeal as to one or more trial errors, the reviewing court should first determine sufficiency of the evidence. When the entirety of the evidence, including evidence that was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any issues regarding trial errors become moot.[1]
The constitutional standard for testing the sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.[2]
Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.[3] Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt.[4]
*593 The elements necessary to sustain a conviction under LSA-R.S. 14:95.1 are: (1) possession of a firearm, (2) prior conviction for an enumerated felony, (3) absence of the ten-year statutory limitation period, and (4) the general intent to commit the crime.[5] Actual possession of a firearm is not necessary to satisfy the possession element of the statute; it is sufficient that the subject had constructive possession.[6] A person is in constructive possession of a thing if it is subject to his dominion and control.[7] A person's dominion over a weapon constitutes constructive possession even if it is only temporary in nature and even if control is shared.[8] The jurisprudence additionally requires proof that the offender was aware that a firearm was in his presence, and that he had the general criminal intent to possess the weapon.[9]
In the present case, Lee testified to his previous conviction of possession of cocaine. Therefore, the only contested fact at trial was whether he possessed the weapons. Lee argues the evidence does not show he had possession of the two guns found in the car, and that in fact, all indicators point to Melvin London as the guilty party. Our review of the record discloses no support for this contention. It is correct that neither Deputy Dear nor Deputy Huesman saw Lee in actual possession of the two guns. Moreover, the crime scene technician did not recover any fingerprints from the guns to show that Lee had held them. However, Melvin London testified that he saw Lee take the guns from under his shirt and place them under the seat. London's testimony, if believed, is direct evidence of actual possession, as well as of intent. The court obviously found this testimony to be credible. When the trier-of-fact is confronted by conflicting testimony, the determination of that fact rests solely with the judge or jury, who may accept or reject, in whole or in part, the testimony of any witness.[10] It is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence.[11]
The other evidence of possession admitted at trial was circumstantial. Deputies Dear and Huesman both testified that they saw Lee duck down in the passenger seat when he spotted their police car. Deputy Dear discovered the guns on the floorboard on the front passenger side of the vehicle, immediately after Lee exited the passenger seat. Even excluding London's testimony, there is a strong inference that Lee bent over in an attempt to hide the weapons when he saw he was the subject of a traffic stop. Equally telling is Huesman's testimony that he found a Raven .25 caliber holster on Lee's person. At trial, Huesman demonstrated that the Raven.25, the first gun found on the floorboard, fit perfectly into the holster.
Considering the foregoing, there was sufficient evidence under the Jackson standard *594 to prove the charge of possession of a firearm by a convicted felon. This assignment of error has no merit.
Lee urges that the trial court erred in failing to suppress the guns seized as evidence at the time of the traffic stop. The parties agreed to refer the motion to the trial on the merits, and because Lee opted for a bench trial, the court was able to try the case simultaneously with the Motion to Suppress.
The transcript does not show that the judge explicitly denied Lee's motion. However, in rendering the guilty verdict, the court stated that the evidence indicated "that the police officers had probable cause to make the traffic stop, and that once that traffic stop was made, what they observed led them to search cursorily the vehicle." We construe this finding, along with the guilty verdict, as denial of the Motion to Suppress. Moreover, the transcript shows that defense counsel responded to the verdict by stating, "We'd note our objection for the ruling on the motion to suppress."
Lee argues that the seizure was illegal, as it was based on a stop for failure to use a safety belt, a violation of LSA-R.S. 32:295.1. Prior to its amendment, that statute provided, in pertinent part:
A. (1) Each driver of a passenger car, van, or truck having a gross weight of six thousand pounds or less, commonly referred to as a pickup truck, in this state shall have a safety belt properly fastened about his or her body at all times when the vehicle is in forward motion.
. . . .
F. No vehicle, the contents of the vehicle, driver, or passenger in a vehicle shall be inspected, detained, or searched solely because of a violation of this Section.
Subpart A, as amended by 1999 La. Acts 926, now reads, in part:
A. (1) Each driver of a passenger car, van or truck having a gross weight of ten thousand pounds or less, commonly referred to as a pickup truck, in this state, shall have a safety belt properly fastened about his or her body at all times when the vehicle is in forward motion.
Subpart F, as amended by 1999 La. Acts 1344, now reads:
F. Probable cause for violation of this Section shall be based solely upon a law enforcement officer's clear and unobstructed view of a person not restrained as required by this Section. A law enforcement officer may not search or inspect a motor vehicle, its contents, the driver, or a passenger solely because of a violation of this Section.
Lee argues that the amendment to Subpart F became effective in "January 2000," after the date of the instant offense. He asserts that because the earlier version of Subpart F prohibited traffic stops based solely on a seatbelt violation, the stop was illegal, and the guns seized pursuant to the stop should have been suppressed.
Lee does not provide authority for his claim that Act 1344 took effect in January of 2000. The state argues that the amendment took effect on August 15, 1999, nine days prior to the offense, citing to Article 3, § 19 of the Louisiana Constitution, which provides that all laws enacted during a regular session of the legislature shall take effect on August 15 of the calendar year in which the regular session is held, unless the bill designates an earlier or late effective date.
A legislative history of Act 1344 (Senate Bill 362) shows that the amendment, passed during the 1999 regular legislative session, had an effective date of August 15, *595 1999. There is nothing in the act itself that designates an alternate effective date. It is clear, then, that the actual effective date of the amendment to Subpart F was August 15, 1999. Lee's claim that the earlier version of the statute is applicable to his case has no merit.
Having determined that the present version of the statute was in effect on August 24, 1999, the record illustrates that Deputies Dear and Huesman had probable cause to stop Lee and his companion if they had a "clear and unobstructed view" of either or both subjects not properly restrained. Huesman testified that while driving alongside the Honda Accord, he could clearly see that the driver was not wearing a seatbelt, although Deputy Dear testified that he could not recall whether he saw the violation, or whether Huesman advised him of it. Melvin London, the driver of the vehicle, testified that he was in fact not wearing a seatbelt when the officers stopped him.
At trial, Lee argued that the officer could not have had an unobstructed view of the car's occupants, as the car's windows were tinted. Lee introduced photographs of a white Honda Accord in support of this assertion, and London identified the car in the photographs as his own, stating that the windows were tinted at the time of the incident. The officers nonetheless testified that they were able to see clearly into the car. Dear stated that, had the windows been tinted to the extent that he was unable to see through them clearly, he would have cited the driver for having illegally tinted windows. As it was, the officer did not issue such a citation. The trial court obviously found the testimony of the officers to be credible.
Moreover, Lee's failure to use a turn signal offered the officers a basis, independent of the seatbelt violation, to stop London's vehicle. LSA-R.S. 32:104B provides:
Whenever a person intends to make a right or left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.
Huesman and Dear both testified that they saw London make a turn without using a turn signal. London himself testified that he did not use a turn signal when turning into the bus terminal. The courts have found that the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.[12] The standard is purely objective, and does not take into account the subjective beliefs or expectations of the detaining officer.[13]
After lawfully stopping the vehicle, and ordering the occupants to exit, Officer Dear could plainly see, through the open door, a handgun on the floorboard under the passenger seat. At that point, the seizure of the gun was lawful because of the plain view exception to the warrant requirement. In order for evidence to be lawfully seized pursuant to this exception, there must be prior justification for police intrusion into a protected area and it must be immediately apparent, without close inspection, that the item is contraband.[14] *596 Having seen the first gun, the officer was justified in entering the car to retrieve it, as well as to search the vehicle. Police officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed within may conduct a search of the vehicle that is as thorough as a magistrate could require in a warrant.[15]
Based on the foregoing, the officer's traffic stop was legal. This assignment of error is without merit.
The record was reviewed for errors patent.[16] In so doing we note that neither the minute entry nor the transcript shows that the trial court advised Lee of the two-year prescriptive period for applications for post-conviction relief under LSA-C.Cr.P. art. 930.8. We remand the case with an order that the district court notify Lee of the prescriptive period in writing and that proof of such notification be placed in the district court record.[17]
Further, we note that Lee's sentence is illegally lenient, as the trial court failed to impose a mandatory fine. LSA-R.S. 14:95.1B provides:
Whoever is found guilty of violating the provisions of this Section shall be imprisoned at hard labor for not less than ten nor more than fifteen years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand nor more than five thousand dollars.
Although the state failed to make an objection at the time of sentencing, it raises the issue on appeal. LSA-C.Cr.P. art. 882 allows a trial court to amend an illegal sentence at any time. The case is remanded for the additional purpose of re-sentencing in compliance with the statutory requirements.[18]
For the foregoing reasons, the conviction is affirmed. The matter is remanded to the trial court for further proceedings in accordance with this opinion.
AFFIRMED; REMANDED.
NOTES
[1] State v. George, 95-0110, p. 6 (La.10/16/95), 661 So.2d 975, 978; State v. Hearold, 603 So.2d 731, 734 (La.1992); State v. Noil, 01-521, p. 12 (La.App. 5 Cir. 12/26/01), 807 So.2d 295, 305.
[2] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291; State v. Williams, 99-223 (La.App. 5 Cir. 6/30/99), 742 So.2d 604.
[3] State v. Williams, supra.
[4] State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Rogers, 99-1378 (La.App. 5 Cir. 11/28/00), 772 So.2d 960, writ denied, 01-0204 (La.12/7/01), 802 So.2d 641.
[5] State v. Gordon, 00-1013, p. 14 (La.App. 5 Cir. 11/27/01), 803 So.2d 131, 142.
[6] State v. Blount, 01-844, p. 4 (La.App. 5 Cir. 12/26/01), 806 So.2d 773, 775.
[7] Id; also State v. Bush, 02-0247, pp. 5-6 (La.App. 5 Cir. 6/26/02), 822 So.2d 859, 864.
[8] State v. Blount, supra; State v. Jackson, 97-1246, p. 6 (La.App. 5 Cir. 4/13/98), 712 So.2d 934, 937, writ denied, 98-1454 (La.10/16/98), 726 So.2d 37.
[9] State v. Gordon, 00-1013 at p. 14, 803 So.2d at 143.
[10] State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983); State v. Cassard, 01-931 (La.App. 5 Cir. 2/26/02), 811 So.2d 1071.
[11] Id.
[12] Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996); State v. Neuman, 01-1066, p. 6 (La.App. 5 Cir. 4/10/02), 817 So.2d 180, 183.
[13] State v. Neuman, supra citing Arkansas v. Sullivan, 532 U.S. 769, 121 S.Ct. 1876, 1878, 149 L.Ed.2d 994 (2001); State v. Waters, 00-356, p. 3 (La.3/12/01), 780 So.2d 1053, 1056.
[14] Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); State v. Gentras, 98-1095 (La.App. 5 Cir. 3/30/99), 733 So.2d 113, 116, writ denied, 99-1302 (La.10/15/99), 748 So.2d 464. State v. Jones 01-177 (La.App. 5 Cir. 10/17/01), 800 So.2d 958
[15] United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). 778 So.2d 23, 00-1014 La.App. 5 Cir. 12/13/00, State v. Jackson, (La.App. 5 Cir.2000)
[16] LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
[17] See, State v. Stelly, 98-578, p. 6 (La.App. 5 Cir. 12/16/98), 725 So.2d 562, 564.
[18] See, State v. Williams, 00-1725, pp. 9-17 (La.11/28/01), 800 So.2d 790, 798, 802; State v. Butler, 01-0907, pp. 12-13 (La.App. 5 Cir. 2/13/02), 812 So.2d 120, 127-128.