963 So.2d 432 (2007)
STATE of Louisiana
v.
Tyrone A. JACKSON.
No. 07-KA-84.
Court of Appeal of Louisiana, Fifth Circuit.
June 26, 2007.
*434 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Anne Wallis, Kia M. Habisreitinger, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Mary E. Roper, Attorney at Law, Baton Rouge, Louisiana, for Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.
The defendant was convicted of second degree murder in violation of LSA-R.S. 14:30.1 and sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence. The defendant now appeals. For the reasons that follow, we affirm the defendant's conviction and sentence.
The following was adduced at trial. On August 31, 2001, at approximately 9:00 p.m., Jefferson Parish police officers responding to a call regarding a shooting in the 4200 block of Yates Street, found the deceased victim, Rance Brown, lying on his back with wounds to his upper torso area. It was determined that the manner of death was homicide and the cause of death was a shotgun wound to the chest with fragmenting injuries of the left lung and aorta. There was also a shotgun wound to the neck.
JPSO detectives arrived at the crime scene, interviewed witnesses, and collected evidence. During the investigation, the detectives learned that, on the morning of August 31, 2001, someone broke into defendant's Cadillac and stole his radio. When defendant and another tenant, Kelly Taylor, spoke to Brian Robinson and his girlfriend, Michelle Dickerson, tenants in the apartment complex, they told defendant that Brown had broken into their apartment and, therefore, Brown may have broken into defendant's Cadillac.[1] Defendant went to Brown's apartment several times during that day and knocked on the door, but no one answered.
*435 At approximately 8:00 p.m., Dickerson and (Brian) Robinson moved out of their apartment because it had been burglarized twice. As their friend, Carlos Paz, was driving them out of the parking lot, the three of them saw Brown's vehicle coming into the lot. Paz specifically saw Brown driving the vehicle. Shortly thereafter Brown made a 911 call from the apartment of Reginald Robinson to report a burglary of his apartment. When the police called back to verify the information, (Reginald) Robinson informed them that Brown was dead.
JPSO Det. Donald Clogher subsequently spoke to (Reginald) Robinson who stated that he saw the shooting. When Det. Clogher showed (Reginald) Robinson a photographic lineup, Robinson positively identified defendant as the shooter. At trial, (Reginald) Robinson recanted his statement and testified that he could not see who shot the victim because it was dark. Robinson explained that he was a paranoid schizophrenic, and that he had been drinking that night. He testified that the victim used his telephone that night, and that the victim told him afterwards he was going to throw his garbage away. He further testified that he heard a gunshot and saw someone running, and that he next saw the victim lying downstairs on the ground.
Another resident of the apartment complex, Kelly Taylor, gave two statements to detectives. In her second statement taken on September 6, 2001 at 2:25 a.m., Taylor said that on the afternoon of August 31, 2001, she overheard (Brian) Robinson tell defendant that Brown broke into defendant's car. She also overheard defendant say that he was going to "get him." Taylor left the apartment complex to run an errand but returned at approximately 5:00 p.m. When she saw defendant, he told her that he was going to kill Brown. Taylor said that she then went into her apartment but came back outside. When she did so, she saw defendant with his shirt open and a cutoff shotgun tucked into his shorts. Afterwards, Taylor stated that defendant cut around the alleyway of the building, and she went back into the apartment. Det. Donald Meunier and Det. Clogher testified that they did not force Taylor to give a statement or threaten her or tell her what to say.
Defendant was arrested and, after waiving his rights, he gave four statements. In his first two statements, taken on September 6, 2001 at 8:55 p.m. and 10:38 p.m., respectively, defendant denied involvement in the murder. However, in his third statement taken on September 7, 2001 at 5:36 a.m., defendant admitted to accidentally shooting the victim one time with a shotgun. When defendant was advised that the victim had been shot twice, defendant admitted in his fourth statement, taken on September 7, 2001 at 6:17 a.m., that the shotgun went off twice. Det. Meunier and Det. Clogher testified that defendant was not beaten, forced, or coerced into giving a statement, nor was he told what to say.
After defendant gave his fourth statement, he agreed to assist the detectives in locating the murder weapon. Det. Clogher testified that defendant provided several false locations, but that he ultimately led them to an abandoned vehicle parked outside of 1365 Elm Street where his girlfriend, Dana Smith, rented a house. When the detectives could not locate any weapons in that vehicle, defendant told them to call Smith and ask her what happened to them. Det. Clogher contacted Smith who came to the scene and agreed to accompany the detectives to the bureau, where she was advised of her rights and gave two statements.
In her first statement taken on September 7, 2001 at 10:41 a.m., Smith told the *436 detectives that she and defendant's father, Tyrone Jackson, Sr., went for a ride on I-10 after the shooting, and that at some point, Jackson pulled the car over, got out, popped the trunk, retrieved a big gun out of the trunk, and threw it over the I-10 before the Hammond exit while she sat in the car. When Jackson returned to the car he said that he thought that was one of the guns defendant had used. Jackson indicated to Smith that he threw more than one gun over, but she only saw one. She stated that Jackson then said, "no murder weapon, no trace," but she denied that one of the weapons was a shotgun. Smith also said that defendant's father told her that defendant had told him he shot Brown.
Smith explained in her first statement that, before the shooting, she was inside her apartment cleaning when defendant walked in and went to the children's bedroom. Afterwards, defendant left the apartment. Smith then looked out the children's bedroom window and saw Brown's car, so she immediately ran downstairs looking for defendant because everybody had told him that Brown had broken into his car. As she did so, she heard the shots, ran back in the house, grabbed her baby, and left. Smith remembered that defendant took the clothes basket out of the bathroom and then dropped it by the door when he went out.
In her second statement taken on September 7, 2001 at 1:18 p.m., Smith said that her first statement was not completely true. Smith admitted that she stepped out of the car and looked into the water as the guns were being thrown. She said that Jackson threw an "AK", a shotgun, a small handgun, and a black device into the water.[2] She stated that, after she looked out the children's window, she told defendant's friend, Kevin, who was visiting, that defendant was about to get in trouble and that she was going to try and stop him. She then ran downstairs and heard two shots.
Afterward, she saw defendant go upstairs with the clothes basket in his hands. When she got to the door, defendant and Kevin left. She went into the house and looked out the window and saw Brown's body lying there. Smith said that she had seen the shotgun before on Elm Street and at the apartment a few days before the shooting. Smith indicated in her second statement that defendant kept the shotgun at the top of their bedroom closet and sometimes in a blue bag on top of the dresser. Smith stated that she also saw the shotgun at her house on Elm Street on the floor of the back seat in an abandoned gray car in the driveway, along with the "AK" and another gun. Det. Meunier testified that he did not threaten or coerce Smith into giving a statement.
Louise Walzer, assistant director of the JPSO crime lab and senior firearms examiner, was qualified as an expert in the field of firearms identification. Walzer examined the projectiles in connection with this case and determined that they came from a .12 gauge shotgun. She testified that a pump shotgun could accidentally fire once, but not twice, and that the purpose of a sawed off shotgun was concealment.
Both Kelly Taylor and Dana Smith were called as witness by the defense and both averred that the detectives threatened and coerced her into giving a statement that was untrue.
Tyrone Jackson, Sr., defendant's father, testified that he had a Winchester rifle and a Smith and Wesson .38 pistol in his house for protection, but that he decided to dispose of them after defendant was arrested. *437 He explained that defendant was on probation, and that if the police were to come to his house and see those guns, defendant would have to go back to jail. Jackson became concerned that the police would search his house after Smith told him that the police had ransacked her apartment. He admitted that he and Smith went for a ride and that he disposed of those weapons between Loyola and Laplace. He denied throwing a sawed off shotgun into the water.
Defendant testified on his own behalf at trial and denied shooting Brown. He testified that, on the day in question, he and Smith saw (Brian) Robinson who told him that he thought Brown had broken into his (Brian's) apartment. Defendant knocked on Brown's door a couple of times to ask about his radio but no one answered. Defendant contended that at 9:00 p.m., he was at his apartment with Seals and Smith. He asserted that he went downstairs with a basket to wash some clothes, and that he was in the laundry room when he heard the gunshots. Afterwards, defendant indicated that he went upstairs, asked Seals if he heard the shots, and then said, "let's get out of here." Defendant testified that before they left, he looked out of his apartment window and saw someone lying on the ground and someone standing around the body.
Defendant testified that the detectives threatened and coerced him into confessing. He contended that the detectives did not allow him to eat, drink, or sleep during the lengthy interrogation. He claimed that the detectives forced him to say that he accidentally shot Brown. He also claimed that the detectives beat him; however, he answered "no" on the booking form when he was asked if he was injured or hurt.
After the defense rested, the state called JPSO Lt. Kenny Kline of the internal affairs division in rebuttal. Lt. Kline testified that he never received a complaint from Taylor, Smith, or defendant.
JPSO Lt. Gray Thurman, the supervising detective, testified in rebuttal that he was in the observation room at times during the interviews of Taylor and defendant, and that they were not threatened, beaten, or coerced, and that they were not denied food or a break.
In his first allegation of error, the defendant contends that the trial court abused its discretion in refusing to keep the hearing on the motion to suppress open for additional testimony, since the defense had the burden of proof and none of the witnesses that the defense had subpoenaed were present for the hearing.
The record reflects that on August 26, 2002, a hearing was held on defendant's motion to suppress identifications and statements. Prior to the hearing, defense counsel said that he sent subpoenas to many witnesses who allegedly made photographic identifications, including Michelle Dickerson, Thomas Berryhill, Steven Fickes, Reginald Robinson, and others. Defense counsel stated that almost all of these people sought had addresses in the apartment complex, and that he did not think that any of these people were still there, because he already went out there. The clerk responded that the subpoenas went out, but there were no returns. Defense counsel then stated that he was ready to proceed with "what we have in the case."
During the hearing, the state called Det. Clogher as a witness on the motion to suppress the five identifications. Det. Clogher testified that he showed a photographic lineup to Michelle Dickerson, Rena Sherrill, Steve Fickes, Reginald Robinson, and Thomas Berryhill, and that they positively identified defendant. He did not *438 suggest that they identify defendant, nor did he coerce them into identifying defendant. Det. Clogher further testified that he showed a photographic lineup to Brian Robinson and Craig Legendre, but they were unable to identify anyone.
Defense counsel then requested that the hearing be held open until he located these persons, because he needed "all these witnesses to come in." Counsel stated that he subpoenaed them and tried to locate them, but none of them were living on Yates Street anymore. In response, the State noted that the hearing had been continued on numerous occasions, and that defense counsel had ample opportunity to subpoena and bring in witnesses. After hearing arguments of counsel, the trial judge denied the motion (to keep the hearing open). The trial judge then denied the motion to suppress the five identifications.
Both the Sixth Amendment of the United States Constitution and Article I, Section 16 of the Louisiana Constitution (1974) guarantee a criminal defendant the right to compulsory process and to present a defense. A defendant's right to compulsory process is the right to demand subpoenas for witnesses and the right to have those subpoenas served. State v. Gordon, 01-734 (La.App. 5 Cir. 11/27/01), 803 So.2d 131, 148, writs denied, XXXX-XXXX (La.12/19/02), 833 So.2d 336 and XXXX-XXXX (La.2/14/03), 836 So.2d 134.
LSA-C.Cr.P. art. 708 defines continuance and recess as follows:
A continuance is the postponement of a scheduled trial or hearing, and shall not be granted after the trial or hearing has commenced. A recess is a temporary adjournment of a trial or hearing that occurs after a trial or hearing has commenced.
Pursuant to LSA-C.Cr.P. art. 709, a defendant must state the following in order to be entitled to a continuance for securing the presence of a witness:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
A motion for recess is evaluated by the same standards as a motion for a continuance. State v. Warren, 437 So.2d 836, 838 (La.1983); State v. Rodriguez, 02-334 (La.App. 5 Cir. 1/14/03), 839 So.2d 106, writ denied 03-0482 (La.5/30/03), 845 So.2d 1061. The decision to grant a recess lies within the discretion of the trial court and will not be overturned absent an abuse of that discretion. State v. Hampton, 98-0331 (La.4/23/99), 750 So.2d 867, 877, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999); State v. Stevenson, 02-0079 (La.App. 5 Cir. 4/30/02), 817 So.2d 343, 345.
In the instant case, the record shows that defendant did not satisfy the requirements of LSA-C.Cr.P. art. 709. Defendant failed to provide facts to which the absent witnesses were expected to testify. He only informed the court that he wanted the witnesses present for the hearing in order to test their veracity. He also failed to state facts and circumstances showing a probability that the witnesses would be available at the time to which the hearing was deferred. In fact, defendant told the trial court that the witnesses probably no longer lived at the addresses on the subpoenas. Additionally, defendant failed to use due diligence in an effort to procure the attendance of the witnesses. The record *439 reflects that defense counsel represented defendant as of May 30, 2002 and, therefore, he had approximately three months to locate and subpoena the witnesses. However, defense counsel waited very late (five days before the hearing) to request that subpoenas be issued to the witnesses.
Furthermore, at the beginning of the hearing, defense counsel told the trial judge that he was ready to proceed even though his witnesses were not present. Finally, defendant has failed to show that he was prejudiced by the failure of the witnesses to testify. The record reflects that defense counsel had the opportunity to and did thoroughly cross-examine Det. Clogher at the suppression hearing.
We find that the trial court did not abuse its discretion in denying defendant's motion for a recess to secure the presence of five witnesses.
In his second allegation of error, defendant argues that the prosecutor made improper comments that, when taken together, resulted in cumulative error that undermined his ability to receive a fair trial. Defendant stated that he moved for a mistrial each time, but his motions were denied.
Under LSA-C.Cr.P. art. 775, "[u]pon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771."
LSA-C.Cr.P. art. 770 provides as follows:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
LSA-C.Cr.P. art. 771 provides the law regarding admonitions:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it *440 is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
A mistrial is a drastic remedy and, except in instances in which a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial. Whether a mistrial should be granted is within the sound discretion of the trial court and the denial of a motion for mistrial will not be disturbed absent an abuse of that discretion. State v. Smith, 04-340 (La.App. 5 Cir. 10/26/04), 888 So.2d 280, 285.
Defendant's first motion for mistrial occurred when the prosecutor offered to take out a line in defendant's statement where he said that he had just come home from doing "four years flat." Defense counsel argued that the entire paragraph containing that line should be excised. The trial judge agreed with the prosecutor that only the one line referring to defendant's prison time should be excised. During direct examination, Det. Clogher testified that State's Exhibit 26A was the original audiotape cassette of defendant's second statement, and that State's Exhibit 26B was "the excised copy, a copy where a small portion was taken out. It's an edited copy." Det. Clogher further testified that a small portion was taken out at the request of the district attorney's office. The prosecutor subsequently asked the trial judge to inform the jury what they discussed at the bench, i.e., that the defense was moving to have a certain portion of the statement taken out.
Defense counsel approached the bench and moved for a mistrial, arguing that the prosecutor should not have told that information to the jury. He contended that the prosecutor had directed the jury's attention to the fact that the statement was excised, and that they were now going to wonder what had been in there. He further contended that this prejudiced defendant. The prosecutor asked the trial judge to instruct the jury to disregard her comment, but defense counsel reiterated his motion for a mistrial. The trial judge denied the motion, and told the jury that there was a small part of the statement that needed to be taken out, that they were not to be concerned with that, and to disregard the attorneys' comments.
The prosecutor subsequently offered the statement into evidence noting that State's Exhibit 26B had been edited. Defense counsel again objected. The prosecutor responded that she was trying to clarify for the record that they were playing the edited tape and not the original tape. Defense counsel said that he was going to ask the trial judge to admonish the prosecutor if she said something like that again.
The remarks in question were not within the scope of LSA-C.Cr.P. art. 770 and, therefore, a mistrial was not mandatory. Defendant was only entitled to an admonition under LSA-C.Cr.P. art. 771. A review of the record shows that the trial judge properly admonished the jury to disregard the remarks after he was requested to do so by the state. As such, defendant was not prejudiced by the remarks. Furthermore, on cross-examination, defendant admitted saying in his statement that he had just come home from doing "four years flat." The record does not reflect that defense counsel objected to that testimony. Therefore, we find no abuse of the trial court's discretion in the denial of defendant's first mistrial motion.
Defendant's second motion for mistrial occurred during direct examination, when the prosecutor asked Det. Clogher whether the individual standing at counsel's table was the person who confessed to *441 murdering Brown. Det. Clogher responded affirmatively, and the prosecutor tendered the witness for cross-examination. Defense counsel then objected to the form of the question, stating that he believed the crime defendant admitted to committing was a negligent homicide and not a murder. The prosecutor stated, "[n]egligent homicide with two shots, Judge?"
Defense counsel moved for a mistrial, and a bench conference was subsequently held. During that bench conference, the prosecutor argued that this was an issue that was going to be argued in closing by defense counsel. The trial court commented, "[y]ou're not supposed to say anything like that." The prosecutor responded that defense counsel made a motion, but then went further and said it was a negligent homicide. The prosecutor offered to rephrase the question. Defense counsel said that did not matter and he moved again for a mistrial. The trial judge denied defense counsel's motion.
After the bench conference was over, the prosecutor rephrased the question by asking Det. Clogher whether the person sitting at counsel's table was the same person who confessed to killing Brown. Det. Clogher responded affirmatively in a lengthy answer. Defense counsel objected, stating that the witness' answer was non-responsive. The prosecutor noted that the witness had already answered the question, and the trial judge said they were going to recess for lunch. During defense counsel's subsequent cross-examination of Det. Clogher, the detective stated that ". . . certainly a pump shotgun cannot be accidentally discharged twice, you have to actually rack an extra round in."
The remarks made by the prosecutor were not within the scope of LSA-C.Cr.P. art. 770 and, therefore, a mistrial was not mandatory. Defendant could have asked for an admonition to the jury to disregard the remarks under LSA-C.Cr.P. art. 771; however, he failed to do so. Additionally, defense counsel himself subsequently elicited the same remarks regarding negligent homicide from Det. Clogher that he complains the prosecutor made to the court, namely, that the shooting could not be considered a negligent homicide because the victim was killed by two shots fired from a shotgun. Accordingly, the trial court did not abuse its discretion in denying defendant's second mistrial motion.
Defendant's third motion for mistrial occurred when he was testified during direct examination that, after the shooting, he looked out of his apartment window and saw someone lying on the ground and "someone standing like around the body." On cross-examination, the prosecutor questioned defendant as to why he did not provide that information to Det. Clogher when he gave his statement. She continued that line of questioning at length without objection before defense counsel moved for a mistrial.
During a bench conference, defense counsel argued that defendant had no obligation to tell anyone anything, and that the prosecutor's questions violated defendant's Fifth Amendment right to remain silent. The prosecutor responded that there were no grounds for a mistrial, as she had the right to cross-examine defendant on what he did not say in his statement. Defense counsel also argued that the prosecutor should not be able to continue referencing the suppression hearing during her questioning, because defendant was not asked at that hearing about what happened that night. The prosecutor said she would move on. After the bench conference ended, the trial judge said it was time to take a break. The record reflects that the trial judge did not rule on the motion for a mistrial, and we consider that the motion was denied. See State v. Johnson, *442 05-180 (La.App. 5 Cir. 11/29/05), 917 So.2d 576, 583, writ denied, XXXX-XXXX (La.12/15/06), 944 So.2d 1282
Defendant did not timely object when the prosecutor began questioning defendant regarding why he failed to tell anyone he saw someone standing near the victim's body after the shooting. In order to preserve an issue for appellate review, a party must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for the objection. LSA-C.Cr.P. art. 841. See, State v. Johnson, 03-620 (La.App. 5 Cir. 10/28/03), 860 So.2d 180, 187, writ denied, 03-3171 (La.3/19/04), 869 So.2d 849. The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity so that he may cure the problem, and to prevent the defendant from gambling on a favorable verdict, then resorting to appeal on errors that might easily have been corrected by an objection. Id. Therefore, we find that defendant is precluded from raising this issue on appeal, considering that he failed to object when the comments in question were first made.
Defendant's forth motion for mistrial occurred when Lt. Thurman testified on rebuttal that defendant and his mother were allowed to speak while defendant was seated in the back seat of the police car on Elm Street during the time the detectives were attempting to locate the murder weapon. Lt. Thurman further testified that he overheard defendant tell his mother "that he was sorry." Defense counsel moved for a mistrial, noting that the state had never given him that information. Defense counsel argued that that statement was tantamount to a confession, but the prosecutor disagreed.
The prosecutor pointed out that Det. Meunier had already testified at trial that defendant told his mother he was sorry, that defense counsel objected, and that the trial judge had told the prosecutor to move on. The trial judge took a recess. When he returned, he said that the court had "thoroughly researched the matter" and was going to deny the motion. However, the trial judge allowed defense counsel to rebut the testimony. The prosecutor stated she had no further questions of the witness, and defense counsel then cross-examined him.
The record shows that defendant did not timely object when the prosecutor first asked Det. Meunier whether defendant had issued apologies and to whom. Additionally, the basis for defendant's objection was hearsay, and not a discovery violation. He raises this issue for the first time on appeal. Defendant is limited on appeal to the grounds articulated at trial. A new basis, even if meritorious, cannot be raised for the first time on appeal. State v. Gaal, 01-376 (La.App. 5 Cir. 10/17/01), 800 So.2d 938, 950, writ denied, 02-2335 (La.10/3/03), 855 So.2d 294.
In addition, we find that the admission of the statement, if erroneous, was harmless, and therefore did not constitute reversible error. State v. Nguyen, 05-569 (La. 5 Cir. 2/3/06), 924 So.2d 258, 265.
Defendant's argument is that the cumulative effect of these "improper" statements and testimony was to undermine his ability to receive a fair trial. We find that the complained of statements, taken alone or together, did not so prejudice defendant that he was denied a fair trial. Therefore, defendant's allegation of error is without merit.
In his third allegation of error, defendant argues that the trial court erred by failing to properly inform him of the time delays for filing an application for post-conviction relief as required by LSA-C.Cr.P. *443 art. 930.8. The state, in its appellee brief, agrees with defendant.
While the commitment fails to show that the trial judge informed the defendant of the delays for filing for post-conviction relief, the transcript reflects that the trial judge informed defendant that he had "two years to file for post conviction relief."[3] This Court has held that the failure to advise a defendant that the prescriptive period runs from the time his conviction and sentence become final is incomplete. State v. Roche, 05-237 (La.App. 5 Cir. 4/25/06), 928 So.2d 761. Accordingly, we remand this matter with instructions for the trial court to inform the defendant of the correct prescriptive period for filing for post-conviction relief by sending appropriate written notice to the defendant after rendition of this Court's opinion and filing written proof that the defendant received the notice in the record. State v. Roche, supra.
We have reviewed the record errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990), and find none which warrant reversal.
The state, in footnote 3 of its brief, contends that this appeal should be dismissed. It argues that the judgment became final once the return date expired. The record reflects that the state did not file a motion to dismiss into the record.
The record indicates that, on November 12, 2004, defense counsel filed a motion for appeal that was granted. The trial court gave defendant a return date of 60 days from November 15, 2004, or until January 14, 2005. The record reflects that an extension was not requested or granted. On May 26, 2006, defense counsel filed a motion to withdraw and to appoint the Louisiana Appellate Project to handle defendant's appeal. That order was granted on June 26, 2006. The record in this matter was lodged in this Court on January 29, 2007.
LSA-C.Cr.P. art. 915.1 B provides in pertinent part that failure of the clerk of the trial court to mail notice of subsequent extensions of the return date to all parties shall not affect the validity of the appeal nor will any error or defect which is not imputable to the appellant affect the validity of the appeal. (Emphasis added). We find nothing in the current Code of Criminal Procedure that says a judgment is final when the return date expires. Once defendant timely moves for an appeal, which was done in the instant case, the clerk handles the matter thereafter. Therefore, the failure to lodge the record is not imputable to defendant. Despite the state's assertion, there is no basis for dismissing the appeal.
The state cited the case of State v. Smith, 284 So.2d 576, 577 (La.1973), which concerned the state's appeal from the granting of a motion to quash. In that case, defendant filed a motion to dismiss the appeal, asserting that since the extensions for filing the appeal were granted after the extended return date had expired, the extensions were null and void. The Louisiana Supreme Court, citing LSA-C.Cr.P. arts. 916 and 919, dismissed the appeal, finding that the judgment became final when the original return date expired without an extension. Id. However, Smith was decided under a previous version of LSA-C.Cr.P. art. 919 which was amended in 1980, 1984, 1987, 1988, and 1999. LSA-C.Cr.P. art. 916 has also been amended since Smith. Furthermore, *444 LSA-C.Cr.P. art. 915.1 B was added to the Code of Criminal Procedure by Acts 1988, No. 525, § 1 and was not in existence at the time of Smith. We therefore conclude that Smith is not applicable to the instant case.[4]
For the above discussed reasons, the defendant's conviction and sentence are affirmed and the matter is remanded to the district court with instructions for the trial court to correctly inform the defendant of the prescriptive period for seeking post-conviction relief.
AFFIRMED AND REMANDED.
NOTES
[1] At trial Det. Clogher testified that Kerry Shy, a resident of the apartment complex, confessed to burglarizing defendant's Cadillac earlier that day.
[2] Det. Clogher testified that a dive team went out but could not locate the weapons.
[3] Where there is a discrepancy between the transcript and the minute entry, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).
[4] The Louisiana Supreme Court did not follow Smith in the case of State v. Kraft, 294 So.2d 219 (La.1974), see dissent.