NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 19-679

STATE OF LOUISIANA

VERSUS

MICHAEL JOSEPH MAYEAUX

**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 186,900 A
HONORABLE KERRY LYNDON SPRUILL, DISTRICT JUDGE

**********

D. KENT SAVOIE
JUDGE

**********

Court composed of Billy Howard Ezell, Shannon J. Gremillion, and D. Kent Savoie,
Judges.

AFFIRMED.

EZELL, J., concurs.

**Charles A. Riddle, III**
**District Attorney, 12th JDC**
**P. O. Box 1200**
**Marksville, LA 71351**
**(318) 253-6587**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
       **State of Louisiana**

**Edward Kelly Bauman**
**La Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
       **Michael Joseph Mayeaux**

**SAVOIE, Judge.**

Defendant, Michael Joseph Mayeaux, committed the September 13, 2016 murders of his grandparents, Eloise "Patti" and Hilman "T-Coon" Mayeaux. He was arrested on two counts of first degree murder. On September 26, 2016, prior to indictment, Defendant made preliminary filings in the trial court, namely a notice of enrollment and limited scope of representation, an assertion of constitutional rights, and a motion to preserve evidence and the crime scene. The indictment, filed on October 27, 2016, charged Defendant with two counts of second degree murder, violations of La.R.S. 14:30.1.

On November 2, 2016, Defendant pled not guilty to the charges. He withdrew his plea and pled not guilty and not guilty by reason of insanity on January 17, 2017. On the same date, the trial court appointed a Sanity Commission composed of Dr. L.J. Mayeux and Dr. John Simoneaux to evaluate Defendant and report on his competency to proceed and whether or not he was sane at the time of the commission of the alleged offenses.

On May 15, 2017, after reviewing reports of the Sanity Commission, the trial court issued an Order finding Defendant lacked mental capacity to understand the proceedings against him or to assist in his defense. The Order further committed Defendant to the custody of the Louisiana Department of Health and Eastern Louisiana Mental Health System in Jackson, Louisiana.

On October 30, 2017, Dr. Mayeux submitted a second report to the trial court indicating that, after reviewing reports of Defendant's treatment over the past months and the opinions of staff at Eastern Louisiana Mental Health System, he was now of the opinion that Defendant possessed the requisite mental capacity to proceed to trial and assist counsel in his defense. That opinion was based on the October 20,

2017 report of evaluating psychiatrists, Dr. David Hale and Dr. Sanket Vyas, which indicated Defendant had "a rational as well as a factual understanding of the proceedings against him/her and has a sufficient present ability to consult with his/her lawyer with a reasonable degree of rational understanding."

On June 19, 2018, Defendant filed a Motion for Sanity Commission to Evaluate Defendant's State of Mind at the Time of the Alleged Offense, noting that the reports of Drs. Mayeux and Simoneaux and the Jackson facility failed to address that issue. The trial court signed an Order stating:

> IT IS ORDERED that this Honorable Court order and appoint a sanity commission specifically to address and evaluate [Defendant's] state of mind at the time of the commission of the abovementioned offense or in the alternative, that if this Honorable Court should deny this Motion . . . , that the experts appointed in the initial sanity commission be ordered to re-evaluate and render an opinion on defendant's state of mind at the time of the offense, or that the District Attorney show cause on the 19 day of July, 2018, at 9:00 o'clock a.m. why relief prayed for in the defendant's Motion . . . should not be granted.

On August 3, 2019, Defendant filed a Motion to Vacate Finding of Competency and alternative Motion for Sanity Commission. Therein, Defendant noted the trial court's ruling on January 24, 2018, that Defendant was competent to stand trial, and argued that the Sanity Commission doctors' opinions relied upon by the trial court were not based upon their independent evaluations, but rather only on reports from Eastern Louisiana Mental Health System. The trial court thereafter rendered an Order the same date setting Defendant's motion for hearing on August 8, 2018.

On August 8, 2018, the District Attorney filed a Motion and Order Appointing Sanity Commission, which was signed by the trial court. The Order appointed a Sanity Commission composed of Dr. Mayeux and Dr. Simoneaux, who

were to re-examine Defendant and report to the trial court on his competency to proceed and whether he was sane at the time of the commission of the offenses.

Thereafter, Dr. Simoneaux evaluated Defendant on August 23, 2018, and issued a report indicating that Defendant understood the proceedings against him and was able to assist in his defense. Additionally, the report stated Defendant had "the capacity to communicate facts and to relate to his lawyer."

On August 30, 2018, the District Attorney filed another Motion and Order Appointing Sanity Commission, which was signed by the trial court. It ordered the appointment of a Sanity Commission composed solely of Dr. Mayeux, who was to re-examine Defendant and report to the trial court on his competency to proceed and whether he was sane at the time of the commission of the offenses.

Dr. Mayeux then issued a report August 31, 2018, indicating Defendant knew he was charged with the murders of his grandparents. Dr. Mayeux noted Defendant had indicated to him that his grandfather had been shot, even though that information was not public at that time. That, coupled with Defendant's hiding in a closet after the murders, led to Dr. Mayeux's belief that those factors supported a finding of Defendant's sanity. Dr. Mayeaux's report further indicated that Defendant knew the identity of his attorney and had met with him. The report also noted that Defendant told Dr. Mayeux he understood the severity of the crimes, how the judicial system works, and that he knew Dr. Simoneaux had categorized him as being sane and able to proceed in the litigation.

Dr. Mayeux's August 31, 2018 report further noted, "On [Defendant's] own admission he states he does not think he is insane." It reflected that Defendant realized the severity of the charges and understood "he could be in jail for the remainder of his life." Dr. Mayeux opined that Defendant would be able to take the

witness stand to answer questions and to assist his attorney in his defense. He further indicated that he agreed with Dr. Simoneaux's testing and results and with his determination that Defendant "is sane and suffers from no mental disorders." Dr. Mayeux concluded Defendant was sane at the time he committed the crimes and had normal organizational skills. He also concluded Defendant "knows right from wrong and is able to assist in his defense." Dr. Mayeux also noted that Defendant's Tourette's Syndrome "has no correlation to sanity[,]" and that Defendant showed no remorse for the crimes of which he was accused.

On October 15, 2018, Defendant filed a Motion to Transfer to Correct Division of Court, seeking to transfer the matter from Division A to Division B. Therein, Defendant stated that the matter had initially been assigned to Division B on September 27, 2016; but that on October 27, 2016, the Bill of Indictment reflected the name of Judge Spruill, who presided over Division A. Thereafter, the matter proceeded in Division A. The trial court denied the Motion on October 16, 2018, and Defendant sought supervisory writs with this court. This court denied Defendant's writ application on October 26, 2018. *State v. Mayeaux*, 18-856 (La.App. 3 Cir. 10/26/18) (unpublished opinion).

The matter proceeded to jury trial beginning October 29, 2018. Prior to the conclusion of trial, Defendant's counsel sought a continuance and/or recess to allow time to obtain Defendant's records from Crossroads/Longleaf Mental Hospital, which he argued he was not aware of until the testimony of Defendant's mother, Jeanette Mayeaux. The trial court denied the motion.

A unanimous jury found Defendant guilty as charged on both counts on November 1, 2018. The trial court sentenced him to two sentences of life imprisonment at hard labor without benefit of parole, probation, or suspension of

4

sentences to run consecutively to each other and to any other previously-imposed sentence on December 18, 2018. The trial judge strongly recommended "appropriate psychiatric medical treatment during [Defendant's] incarceration, if available."

Defendant filed a motion for new trial on November 15, 2018, alleging that newly discovered evidence was disclosed on the day before the trial concluded. However, court minutes indicate the trial court ordered "that the motion is hereby vacated and withdrawn pursuant to oral motion" by Defendant's counsel.

Defendant now seeks review of his convictions and sentences. He asserts the following as assignments of error:

I.     The trial court erred in failing to transfer Michael Mayeaux's case to the correct division of court.

II.    The trial court erred in failing to grant a continuance when it was only discovered the last day of trial that Michael Mayeaux was a patient at Crossroads/Longleaf Mental Hospital.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find no errors patent.

## ASSIGNMENT OF ERROR NUMBER 1

Defendant contends the trial court erred by denying his motion to transfer this case from Division A to Division B of the twelfth judicial district court since the case had initially been allotted to Division B on September 27, 2016.

On October 15, 2018, just two weeks prior to the scheduled October 29, 2018 trial date, Defendant filed a motion to transfer his case to Division B. At the hearing on Defendant's motion, defense counsel recognized that the proceedings had taken

5

place in Division A since the indictment in October 2016, but argued that the case was, nevertheless, a Division B case in accordance with the court's rules, which state:

> Criminal cases shall be allotted to each division according to the date the offense is charged to have been committed. Alternating calendar weeks shall be pre-assigned to each division and the allotment to a particular division shall be based upon said weekly assignments and the date of the alleged offense. After a criminal case has been allotted, all matters relating to said case shall be taken up by the Judge of the division to which the case has been allotted, provided, however, that filings and uncontested matters may be taken up before either division.

La.Dist.Ct.R. 14.0, App. 14.0A (12th JDC),

In addition, the twelfth judicial district court, in Appendix A to the District Court Rules, adopted La.Dist.Ct.R. 14.1, which states:

> (a) Unless a different method is set forth in Appendix 14.1, if a defendant has a felony case pending and previously allotted, any new felony arrest for that defendant shall be allotted to the division to which the pending felony was allotted. This "felonies-following-felonies" rule also applies to any pending felony arrests for a co-defendant with a new arrest and billed as a co-defendant.

> (b) For purposes of this Rule, a felony case remains pending until any of the following events has occurred:

>> (1) a bill of information or indictment is filed or amended, reducing the case to a misdemeanor;

>> (2) the District Attorney's Office enters a nolle prosequi in a case; or

>> (3) there is an adjudication of guilty by plea or trial.

Here, Defendant's case was initially allotted to Division B based upon the date of the offense; however, because Defendant had previously pled guilty to a different felony in Division A, and was on probation for that felony at the time of the offenses at issue here, the instant case was assigned to Division A.

6

The trial judge denied Defendant's motion explaining the following practice among the judges of twelfth judicial district court:

> previously existing probation or the pending probation is a determining factor of what division handles the case. Not the date of the offense well it is true that the date of the offense on the calendar it would appear that this would be a division B case, in truth and in fact it is an exception to the ordinary rule and it's correctly allotted to Division A and it's going to be maintained as a Division A case as there is a pending active felony probation at the time of the commission of the felony charges that are pending for trial in this case.

On October 25, 2018, Defendant filed a writ application with this court seeking review of the trial court's denial of his motion to transfer. On October 26, 2018, this court issued a ruling denying Defendant's writ application and stating as follows:

> **<u>WRIT DENIED:</u>** The defendant has not alleged or shown he is prejudiced nor is there any allegation or showing that the District Attorney attempted to manipulate the allotment. *See State v. Nunez*, 15-1473 (La. 1/27/16), 187 So.3d 964. The case has been handled pre-trial in Sec. A without objection since indictment on October 27, 2016, and the orderly administration of justice will be best served by maintaining the current trial date, which has been scheduled for Monday, October 29, 2018. Under the particular circumstances of this case, we find no error in the trial court's ruling.

*State v. Mayeaux*, 18-856 (La.App. 3 Cir. 10/26/18) (unpublished opinion).

Judge Ezell dissented, stating as follows:

> Ezell, J. dissents and would grant the writ for the following reasons. Defendant's case was allotted to Division B of the Twelfth Judicial District Court according to La.Dist.Ct.R. 14.0, App. 14.0A, 12th JDC. The Twelfth Judicial District Court has adopted an exception to that rule that allows allotment for a felony case to the same division as a defendant's pending felony. Defendant's prior felony case is no longer pending, according to the rules adopted by the Twelfth Judicial District, because it was adjudicated by his guilty plea. Pursuant to the rules adopted by the Twelfth Judicial District Court, this case may not properly be heard in Division A.

*Id.*

7

On appeal, Defendant again seeks review of the trial court's denial of his motion to transfer the matter to Division B, arguing that the prior denial of a supervisory writ application does not preclude reconsideration of the same issue on appeal. *State v. Castleberry*, 98-1388 (La. 4/13/99), 758 So.2d 749, *cert. denied*, 528 U.S. 893, 120 S.Ct. 220 (1999). While that may be true, we find no basis upon which to change this court's conclusion in connection with our denial of Defendant's previous writ application. There is no indication that there was any objection to the matter proceeding in Division A for nearly two years, and there is no indication that Defendant was otherwise prejudiced by proceeding in Division A or that the District Attorney attempted to manipulate the allotment. *See State v. Nunez*, 15-1473, 15-1486 (La. 1/27/16), 187 So.3d 964. Accordingly, this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER 2

Defendant also argues on appeal that the trial court erred when it denied his motion to continue presented on the last day of trial to obtain additional medical records pertaining to Defendant's mental state at the time of the offenses. The motion was made following the testimony of Defendant's mother, Jeanette Mayeaux, indicating that Defendant had intermittently received psychiatric medical treatment from Longleaf/Crossroads Mental Hospital, including inpatient hospitalizations, from the time he was a child until shortly before the murders. According to Defendant, medical records from Longleaf/Crossroads Mental Hospital "could have aided the experts and trier of fact in determining [Defendant's] state of mind at the time of the crime." Defendant further argues on appeal that "there was no failure on the part of trial counsel in locating the evidence as he had just recently located . . . Jeanette Mayeaux[.]"

According to Ms. Mayeaux, she first spoke to Defendant's counsel the day before her trial testimony. She testified that defense counsel had sent her "a message on Facebook and told [her] a couple of things," but she described herself as "not very Facebook savvy." She also indicated that defense counsel told her he had "been looking for [her] for a long time." Ms. Mayeaux further indicated that, although she had wanted to talk to Defense counsel earlier, she was under the impression the Assistant District Attorney would contact her if she was needed, and her sister had told her not to contact Defendant's counsel.

Ms. Mayeaux also testified that she first spoke to the State's counsel "the day of the grand jury[,]" which was in October 2016. She stated that she had lived at the same address and had the same phone number since 2006. She further testified that she "spoke to the victim's assistance coordinator several times" about the matter.

At trial, Ms. Mayeaux also indicated that Defendant was treated at Longleaf/Crossroads by Dr. Falarin "approximately at the end of May of 2016 until mid-June of 2016[,]" and that Dr. Falarin had recommended that Defendant be interdicted because he was non-compliant with his medications. Attorney Cory Roy, who also testified at trial, indicated that he had been contacted by a pro bono legal agency to help Defendant's grandmother, Patti Mayeaux, obtain Defendant's interdiction so she could place him into a facility. However, before the interdiction could be accomplished, Defendant murdered Patti and his grandfather in September 2016.

Ms. Mayeaux also testified that Defendant had received medical treatment from Longleaf/Crossroads when he was nine or ten years old because "[h]e was having some issues at school with the Tourette['s] Syndrome and he was getting into

trouble a lot." She said he had inpatient treatment there "for behavioral and psychiatric" issues.

Dr. Simoneaux and Dr. Mayeux also testified at trial. Dr. Simoneaux testified he did not believe Defendant "has ever suffered from a significant enough mental illness or disturbance to prevent him from knowing right from wrong." He did not recall seeing any medical records indicating Defendant had been diagnosed with a mental illness, but he thought he "had been told records exist." Although Dr. Simoneaux's report dated February 19, 2017, stated his belief that Defendant "may have suffered from a significant mental disease or defect," he believed such a disease or defect did not prevent Defendant from knowing right from wrong at the time of the murders. Dr. Simoneaux also found Defendant "understood his actions were wrong." Further, Dr. Simoneaux believed Defendant understood the charges against him and was capable of assisting in his defense. He had "no reason to believe that [Defendant's] mental condition would deteriorate under the stress of a trial." The report noted "no treatment records were provided" for Dr. Simoneaux to review.

In contrast, Dr. Mayeux's report dated February 2, 2017, indicated his belief "that [Defendant] is unable to assist in his defense due to his mental status[.]" Dr. Mayeux recommended Defendant "be placed in [a] psychiatric unit until he is deemed mentally stable to stand trial for the death of his grandparents." Although Dr. Mayeux did not specifically state whether Defendant knew right from wrong at the time he committed the murders, he referred to Defendant's comments that "his grandfather shot himself after having stabbed his grandmother to death." Defendant told Dr. Mayeux he heard that on television, and he did not know why he was in a closet when law enforcement found him there. He did not know what the charges were against him. He "denied killing his grandparents, wanting to kill others and

10

denied having been in treatment for psychological problems." Dr. Mayeux believed Defendant "has all the characteristics of chronic psychosis" and classified him as a sociopath and a psychopath. While the February 2, 2017 report was discussed at trial, the report was not introduced into evidence. However, Dr. Mayeux testified he believed Defendant was capable of distinguishing between right and wrong at the time of the offenses and was able to assist in his defense at the time of trial.

Defendant contends he should have been granted a continuance after Ms. Mayeaux's testimony to allow him time obtain his records from Longleaf/Crossroads. He argues those records constitute newly-discovered evidence he had no way of obtaining because he did not know they existed until his mother testified about them. He further alleges prejudice because the medical experts who testified were unable to consider that evidence since his motion to continue was denied.

"A continuance is the postponement of a scheduled trial or hearing, and shall not be granted after the trial or hearing has commenced. A recess is a temporary adjournment of a trial or hearing that occurs after a trial or hearing has commenced." La.Code Crim.P. art. 708. Nevertheless, when a motion is "improperly styled as one of continuance or recess, the court may examine the motion as though it had been properly denominated. . . . Thus, although the motion may have been improperly styled as one for 'continuance,' it can be reviewed as if it had been properly named as one for recess." *State v. Ford*, 42,928, 42,929, 42,930, pp. 12-13 (La.App. 2 Cir. 2/13/08), 976 So.2d 321, 328, *writ denied,* 08-605 (La. 10/3/08), 992 So.2d 1010 (citations omitted).

> Both the Sixth Amendment of the United States Constitution and Article I, Section 16 of the Louisiana Constitution (1974) guarantee a criminal defendant the

11

right to compulsory process and to present a defense. A defendant's right to compulsory process is the right to demand subpoenas for witnesses and the right to have those subpoenas served. *State v. Gordon*, 01-734 (La.App. 5 Cir. 11/27/01), 803 So.2d 131, 148, *writs denied*, 2002-0362 (La.12/19/02), 833 So.2d 336 and 2002-0209 (La.2/14/03), 836 So.2d 134.

*State v. Jackson*, 07-84, p. 9 (La.App. 5 Cir. 6/26/07), 963 So.2d 432, 438, *writ denied*, 07-1666 (La.1/25/08), 973 So.2d 754.

The trial court has great discretion in deciding whether to grant a continuance, and its ruling will not be overturned absent an abuse of discretion. *State v. Bourque*, 622 So.2d 198 (La.1993); *State v. Champion*, 412 So.2d 1048 (La.1982); La.C.Cr.P. art. 712. Further, we generally will not reverse a conviction due to an improper ruling on a continuance unless there is a showing of specific prejudice to the defendant as a result of the denial of the continuance. *State v. Strickland*, 94-0025 (La.11/1/96), 683 So.2d 218; *State v. Knighton*, 436 So.2d 1141 (La.1983).

*State v. Castleberry*, 98-1388, p. 11 (La.4/13/99), 758 So.2d 749, 759-60, *cert. denied*, 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999).

*State v. D.T.*, 08-814, p. 34 (La.App. 3 Cir. 12/11/08), 998 So.2d 1258, 1281, *writ denied,* 09-624 (La. 11/25/09), 22 So.3d 171.

"In order to show prejudicial error sufficient to warrant reversal, the defendant must show that the testimony the witness would have given would have been favorable to the defense and would indicate the possibility of a different result." *State v. Landry*, 03-1632, p. 11 (La.App. 4 Cir. 5/19/04), 876 So.2d 146, 153, *writ denied*, 04-1586 (La.11/15/04), 887 So.2d 474 (citing *State v. Stevenson*, 02-79 (La.App. 5 Cir. 4/30/02), 817 So.2d 343).

*State v. Tolliver*, 08-1486, p. 40 (La.App. 3 Cir. 5/13/09), 11 So.3d 584, 607-08, *writ denied*, 09-1441 (La. 2/26/10), 28 So.3d 269. "A motion for recess is evaluated by the same standards as a motion for a continuance." *State v. Williams*, 07-1407, p. 30 (La. 10/20/09), 22 So.3d 867, 889, *cert. denied*, 560 U.S. 905, 130 S.Ct. 3278 (2010).

The State argues a "continuance" was improper because trial had already begun and what Defendant sought was more than a temporary recess. However, whether the request was styled as a motion for a continuance or a motion for recess, is of no moment for purposes of our analysis.

In *Tolliver*, 11 So.3d 584, the defendant requested a continuance a week into the trial because the initial investigator in the case and an FBI profiler were unavailable to testify. Both witnesses "had already testified extensively . . . and had been thoroughly cross-examined by the defense." *Id.* at 600.

On appeal, this court found the record failed to show defense counsel's due diligence in securing the witnesses' presence. Further, the record contained nothing to show what the witnesses' testimony would have been. Thus, the record failed to show the defendant was prejudiced by the denial of the motions for continuance based on the unavailability of the witnesses. This court commented, "because there is no evidence in the record that would lead this court to conclude the defendant was prejudiced by the denials of defense counsel's motions for continuance and recesses based on the unavailability of defense witnesses, there was no reversible error." *Tolliver*, 11 So.3d at 608.

Here, we likewise find that the record shows no prejudice to Defendant by the denial of the motion for a continuance. Defendant was treated at Longleaf/Crossroads just a few months prior to the murders, but he now claims he knew nothing of that treatment until his mother testified. The State had located Ms. Mayeaux in October of 2016, when the grand jury met. She had lived at the same address with the same phone number for a long time. In contrast, defense counsel found her on Facebook only immediately prior to the trial. Counsel placed no

13

evidence into the record to detail what efforts he had made to locate Ms. Mayeaux. He stated merely that he had been looking for her a long time.

Once the evidence of Defendant's treatment at Longleaf/Crossroads came to light, Defendant could have called Drs. Simoneaux and Mayeux back to the witness stand to ask them if that information would impact their opinions. Instead, the record shows nothing to suggest Defendant made any effort to determine how important those records could be if they in fact supported Ms. Mayeaux's testimony. Defendant's argument requires this court to assume facts and evidence that are not in the record and that Defendant has made no effort to place in the record. We further find that Defendant has not shown any prejudice resulting from the trial court's denial of his motion to continue the trial based on Ms. Mayeaux's testimony. Therefore, we find no merit to this assignment of error.

## DECREE

For the reasons set forth above, Defendant's convictions and sentences are affirmed.

**AFFIRMED.**